## CHARLES R. PYE v. MARSHALL J. DIEBOLD AND ANOTHER.[1]

January 20, 1939.

No. 31,896.

[1]Reported in 283 N. W. 487.

*Charles R. Pye, pro se,* and *Charles N. Sayles,* for appellant.
*Kopple Hallock,* for respondents.

JULIUS J. OLSON, JUSTICE.

Plaintiff brought this action to recover attorney's fees; the basis, one of *quantum meruit.* His motion for an instructed verdict "in an amount to be fixed by the jury" was granted; but the resulting award was in his estimation much too meager, so he moved for a new trial. That being denied, he appeals.

Defendants were the owners of six shares of stock in a Colorado corporation for which a consideration of $1,800 had been paid. Later that corporation experienced financial difficulties and became bankrupt. The parties originally creating it sought to recoup their investment by the creation of a new corporation, the plan being that each of the stockholders of the old corporation was to be provided with stock in the new, dollar for dollar. During the formative period of the new company defendants received a letter outlining the new plan. Upon receipt thereof Mr. Diebold went to plaintiff's office "for the purpose of obtaining advice as to the desirability of substituting" the stock already held "for stock in another corporation."

Plaintiff alleged in his complaint that he was employed by defendants "to recover as much as possible" of the $1,800 paid by defendants for their six shares; that under "the terms and conditions of said employment * * * plaintiff was to receive nothing for his services in the event that he was unsuccessful" in the recovery of "any part of said sum for said defendants, but in case he was able

to recover any part of said sum he was to charge a reasonable fee for the services so rendered." Defendants pleaded the general issue; also, that plaintiff's employment was limited to the single purpose of "obtaining advice" as to whether their present stock should be exchanged for the new.

Plaintiff testified that relying upon his interpretation of the arrangement he made a trip to St. Paul and two trips to Austin. As a result of these trips and some correspondence he secured a deposit of $1,200 in an Austin bank to be paid when defendants approved the settlement he had negotiated. Mr. Diebold being informed thereof repaired to plaintiff's office, and the matter was talked over with apparent candor and thoroughness. Mr. Diebold thought it unwise to go through with any such deal but asked plaintiff what his fees would be if the deal were to be put through. He was informed that the fee would be $400, *i. e.*, one-third of the total sum. There was an immediate flare-up by Mr. Diebold; he deemed the charge unreasonable and simply would not stand for any such charge. The whole deal was called off as far as defendants were concerned. Defendants did not accept any cash settlement for their stock but exchanged it for the stock in the new corporation as originally planned by those having in hand the formation of the new company.

As might be expected, there is violent conflict in the evidence between the contentions of plaintiff and defendants. The case was submitted to the jury in a charge free from criticism. Plaintiff's recovery was fixed by the verdict at $40. He stoutly maintains the amount is so inadequate as to conclusively show that the jury was influenced by passion and prejudice.

■ Defendants had the undoubted right to discharge plaintiff with or without cause. This being so, the rule is:

"If the client has the right to terminate the relation of attorney and client at any time without cause, then the contract differs from an ordinary contract of employment in that one of the parties thereto may put an end to the same, whether agreeable to the other party or not. If the client has this right as an implied con-

dition of the contract under the law, it follows as a natural consequence that he cannot be compelled to pay damages for exercising that right which his contract gives him."

That rule "secures to the attorney the right to recover the reasonable value of the services which he has rendered, and is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential." Lawler v. Dunn, 145 Minn. 281, 284, 176 N. W. 989, 990.

■ Plaintiff's contention is that he was retained "to recover as much as possible" of the $1,800 defendants had invested in this venture. Their claim is that he was consulted only in respect of getting advice on the matter of exchanging their holdings into something else. If the jury believed defendants' testimony, clearly the verdict is adequate. Even if the jury accepted plaintiff's version, his authority to "recover as much as possible" did not relieve him of the duty of conferring with his clients before closing a settlement. He had no implied authority to compromise his clients' cause. There was no emergency. There was plenty of opportunity for consultation, all the parties being residents of the same town, Northfield. So in any event the rule applies that, "Where plaintiff does not authorize the settlement of an action by his attorney, he has the right to determine whether the settlement attempted by the attorney was or was not provident, and need not show it was improvident in order to have it set aside." 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 690, and cases under note 39.

■ While the verdict may appear small in view of what plaintiff claims, yet the fact remains that the limited amount of effort employed and the results accomplished in defendants' behalf is such that we cannot say it is legally so inadequate as to establish either passion or prejudice. Plaintiff is in no worse position than was the attorney in Morris v. Wulke, 141 Minn. 27, 28, 169 N. W. 22, where a fee of $5,000 was sought. The verdict was for only $250. There plaintiff's experts testified that the services rendered were of the value of $2,500 to $3,000. The court said: "The opinion of

experts as to the value of services, even though not directly contradicted, is not in ordinary cases conclusive." (Citing cases.)

After all, when this court is required to pass upon the propriety of whether the trial court should have granted a new trial for inadequacy of damages, it is necessary that the one complaining establish "a clear abuse of discretion" before we may reverse. 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7141, and cases under note 45. This plaintiff has failed to do; hence the order is affirmed.

Affirmed.

[1] Reported in 283 N. W. 485.