BECKER COUNTY NATIONAL BANK v. A. B. DAVIS.[1]

March 17, 1939.

No. 31,983.

[1]Reported in 284 N. W. 789.

*Eriksson & Eriksson,* for appellant.

*C. U. Landrum* and *D. N. Lindeman,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order denying his blended motion for judgment notwithstanding or new trial.

The action was brought to recover principal and interest on a promissory note for $590 given by defendant to plaintiff May 25, 1937, due on demand. In addition thereto, plaintiff also sought recovery of $100 as attorney's fees, as by the terms of the note the maker had agreed to pay collection charges or "reasonable attorney's fees" if the note was not paid.

The present note was given in renewal of a prior note and accumulated interest given by defendant to one George Lund, dated May 18, 1936, for $550, due December 15, 1936, with interest at six per cent from its date until paid. A few days after the date of the $550 note it was endorsed to plaintiff by said Lund, who also guaranteed its payment.

Defendant's answer admitted the execution and delivery of the note in suit and that it was unpaid and, in addition, that the note

provided he would pay "all costs of collection or a reasonable attorney's fee in connection with the collection of said note." By way of avoidance he alleged that the note "was made without consideration and that plaintiff had notice thereof and never paid any consideration therefor." As his "affirmative defense," he alleged that fraud was practiced upon him in the procurement of the $550 note. The basis upon which the claimed fraud was predicated is not here important. Plaintiff's reply put in issue all new matters pleaded, and alleged that the fraudulent practices relied upon by defendant were, as to Mr. Lund, *"res judicata"* by reason of a decision rendered in another action wherein this defendant was plaintiff and said Lund and many others were defendants; that as a result of that trial and with plaintiff's consent in that case a dismissal on the merits was rendered in behalf of Mr. Lund. Plaintiff further claimed that as the result of that action and by virtue of the judgment there entered defendant now is estopped from asserting the contrary in this action.

At the trial these additional facts developed: Prior to May 18, 1936, one Robert Orosz and several others associated with him made a deal with defendant whereby certain real property in Superior, Wisconsin, was sold to defendant. In connection with that deal several notes were executed by defendant to Orosz and his associates. One of these men came to Lund's place of business (Lund being a dealer in automobiles and trucks) and expressed a desire of purchasing a truck, offering one of defendant's $550 notes to apply upon the purchase price. Lund did not wish to go into this kind of deal but informed the prospective purchaser that he knew defendant Davis, considered him perfectly responsible, and suggested that if the note sought to be negotiated could be exchanged for a new note to be given by defendant and made payable to Mr. Lund, a deal could be made. This was done. But even then Mr. Lund would not go through with the deal until he could see defendant Davis personally. He did so, and, being assured by Mr. Davis that the note bore his genuine signature, the deal was later consummated, and the truck delivered to the purchaser.

In July, 1936, long prior to the execution of the note here in suit, defendant Davis, appearing by his present counsel, brought suit against Robert Orosz and many other individuals, including Lund. In his complaint he sought to have Lund, as the holder of one of the notes involved in the land case, bound by the judgment to be entered in the main action against the perpetrators of the alleged fraud in the transaction. At the trial of that action Lund was called for cross-examination by counsel for Davis. It then developed that the facts were as we have outlined them. Counsel for plaintiff stated to the court, and this statement was made a matter of record, that as to the note given to Mr. Lund by Davis: "It is conceded of record that the note having been negotiated at the time in question was transferred in such a manner as to be good in the hands of this man and so far as he is concerned we have no intention to question the validity and quality of the note whatever as to him." Later on, while counsel were discussing this matter, the court said: "So far as this defendant [Lund] is concerned he is certainly out of the woods." Mr. Eriksson, speaking for Mr. Davis, said: "We concede that."

With this proof coming into the trial of this case the court was of opinion that defendant's offer of proof of fraud respecting Orosz and his companions was incompetent and immaterial to the issues here presented; that as to the note given to Mr. Lund and later negotiated to plaintiff there was no defense. Both parties moved for direction of verdict in their own favor. When the case was finally submitted, the court granted plaintiff's motion, denying defendant's, in the amount claimed and included also $100 as attorney's fees.

■ Defendant is in an anomalous position. In the former action (the one brought by Davis against Orosz, *et al.*) Davis, by his duly authorized counsel, conceded that the note given to Lund was free from attack; that so far as Lund was concerned, "We have no intention to question the validity and quality of the note." When the court granted Lund's motion for a finding on the merits in his favor counsel for Davis said: "That motion is granted with our approval * * *." Even now defendant in his brief states: "No

claim was made in this former action that George Lund had been a party to the fraud which produced the note." (Reference being had to the $550 note given by Davis to Lund.) When these matters and transaction took place before the court at the September, 1937, term of court Lund had disclosed the circumstances by virtue of which he came into possession of this note; that he had parted with a valuable truck upon the belief that he had a good note given by one whom he considered financially responsible and had applied the amount of the note as a part payment thereof.

The original obligation as between Davis and Lund having been established by virtue of agreement of counsel and resulting in a final judgment, we are simply wasting time in discussing whether the renewal note given to plaintiff, representing as it does the same obligation, may now be enforced by the holder.

Unquestionably there was a consideration for the instrument. Defendant asserts that he got nothing out of it. But that is not material because it conclusively appears that one of Orosz's associates did receive the consideration from Lund. And that this was as effectual as if it had moved directly to Mr. Davis is clear.

"Any consideration sufficient to support a simple contract is value for a negotiable instrument. * * * Accordingly, such consideration may be said to consist in any benefit to the promisor, or in a loss or detriment to the promisee; or to exist 'when at the desire of the promisor, the promisee or any other person has done or abstained from doing, or does or abstains from doing, or promises to do or abstain from doing, something,' the consideration being the act, abstinence, or promise." 7 Am. Jur., Bills and Notes, § 233.

Defendant having in the former action taken a definite stand in respect to this instrument, he should not now be permitted to retry the identical issue there presented and determined adversely to his present contentions.

Much argument is devoted to the fact that plaintiff bank was not a party to that action and that at the time of trial the note was in its, not in Lund's, possession. That too is unimportant for

the simple reason that Lund had not only endorsed the note but had guaranteed its payment. As such he had a vital interest to protect and preserve. As defendant would in any event be obligated to pay Lund the original amount and interest on the $550 note given to Lund, it necessarily follows that the renewal in the hands of the bank is likewise free from the attack now presented. See O'Brien v. Manwaring, 79 Minn. 86, 81 N. W. 746, 79 A. S. R. 426.

■ Defendant's brief consists of some 62 pages and is further elaborated by a reply brief. One would naturally think that something helpful would be cited in respect to the claimed error on the part of the court in allowing $100 attorney's fees. Six lines are devoted in his brief to that issue:

"The defendant's position is that without an allegation showing that an attorney fee had been incurred, the amount of which would be charged against the defendant, no foundation had been laid for any extra attorney's fees and that when the court overruled the objection, an error was committed."

When this question of attorney's fees came before the court at the trial of the present case Mr. Landrum was on the stand testifying for the plaintiff. He was about to state his opinion in respect to the "reasonable attorney's fee" in this case. This is what the record shows:

Mr. Eriksson: "Wait a minute right there. I would like to interpose an objection at this point, it appearing that the witness is about to express an opinion as to the reasonable value of the attorney's fee. Defendant objects to it on the ground that it is inadmissible under the pleadings, and no foundation has been laid. *For the purpose of helping the court as well as counsel, it is not that counsel is not qualified to express an opinion or that the stated sum is not a fair compensation, but we claim that the pleadings do not lay the foundation necessary to express an opinion."* (Italics supplied.)

It will thus be seen that defendant did not object because the sum claimed by plaintiff "is not a fair compensation" nor did the

objection go to lack of qualification on the part of Mr. Landrum "to express an opinion" in respect thereof. The whole objection goes only to the sufficiency of the complaint, which did set forth that "by said note the defendant promised and agreed to pay all costs of collection or a reasonable attorney's fee in connection with the collection of said note." This paragraph was admitted by defendant's answer. The next paragraph states that the "reasonable attorney's fee for the collection of said note is one hundred dollars ($100.00)." So it will be observed defendant was advised that this sum was wanted by plaintiff as a part of defendant's written promise. There being no motion to make the complaint more specific and certain and no demurrer having been interposed, we would be going far afield were we now to reverse because of inadequacy of this pleading. The court was of opinion that "the fact that this case has been on trial is ample evidence for the necessity of [attorney's] services."

We are not to be understood as holding that the jury was bound to accept plaintiff's proof in this regard to be conclusive. This court has held in many cases that: "The opinion of experts as to the value of services, even though not directly contradicted, is not in ordinary cases conclusive." Morris v. Wulke, 141 Minn. 27, 28, 169 N. W. 22; Pye v. Diebold, 204 Minn. 319, 322, 283 N. W. 487, 489. All we do hold is that the objection made by defendant does not go to that issue. "A party is not only bound to make specific objections at the time the evidence is offered, but he is also limited on appeal to the objections he raised below." 1 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 405, and cases cited under note 75.

Further discussion is unnecessary. The result reached is right, and the order is affirmed.

MR. JUSTICE HILTON, incapacitated by illness, took no part.