MORTON E. COLE *v.* MAX MYERS ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

224

Argued April 3—decided July 22, 1941.

*Samuel H. Platcow,* for the appellant (defendant The Linden Corporation).

*Edward W. Broder,* for the appellee (plaintiff).

ELLS, J.   The plaintiff brought this action against Myers and Gross, who were officers and directors of the Linden Company, and against the corporation, to recover attorney's fees alleged to have been earned

under express contracts of employment. The Linden Company owned real estate in Hartford, and previous to the plaintiff's employment had appealed from a city tax assessment on the list of 1932. The complaint in the present action alleges that the plaintiff was employed by Myers and Gross to take such proceedings as he deemed advisable in the prosecution, advancement or settlement of the pending appeal and "also to take appeals on the assessments for the years 1933 and 1934"; and that they agreed to pay him a fee equal to one-third of any saving of taxes obtained by a reduction of such assessments, plus necessary expenses; and that the "defendants" likewise employed him on the same fee basis to obtain a reduction in the assessment for the year 1935. He further alleges that he brought these additional actions and that when all were reached for trial the presiding judge called a conference and endeavored to settle the cases, that a reduction of $110,000 was arrived at subject to the approval of the defendants, and that thereafter the plaintiff was discharged and the defendants refused to pay him the contingent fees and expenses based upon a $110,000 reduction.

During the trial the plaintiff withdrew his claim against Myers and Gross. The jury rendered a verdict against the Linden Company for the full amount claimed, and answered interrogatories, finding that there were express contracts whereby that defendant employed the plaintiff as its attorney to obtain a reduction in tax assessments on the lists of 1932, 1933, 1934 and 1935, and agreed to pay one third of the total amount of the saving in taxes plus expenses; and that the plaintiff did, on June 2, 1936, obtain a legal offer from the City of Hartford to reduce the assessments to the extent of $110,000. The defendant

appealed from a denial of a motion to set the verdict aside, and from the judgment.

The complaint is inartificially drawn, and it is doubtful whether it states a cause of action against the corporation on such of the contracts as it alleges were made by Myers and Gross alone, but waiving this, the first question is whether the evidence reasonably supports the jury's finding, implicit in its verdict, that the defendant agreed to pay the plaintiff one third of the savings in taxes obtained through the 1933, 1934 and 1935 appeals. The evidence plainly supports the claim as to the terms of the employment concerning the pending 1932 appeal, but as to the others it is only to the effect that after such employment, on three occasions, by telephone and casual street conversations, the plaintiff suggested that appeals be taken on the later lists and that Myers and Gross said "Go ahead and take care of them." There is no evidence of any specific agreement as to fees. The plaintiff claims the jury could and did draw an inference that the fees were to be the same as in the original employment. We cannot say it was an inference which the jury could not reasonably have drawn from the evidence.

The defendant's principal contention is that the evidence does not support the claim that the plaintiff performed his part of the contract and obtained a legal offer from the city of Hartford to reduce each assessment to the extent of $110,000, or that such settlement was "arrived at." The supporting testimony is that when the appeals were reached for trial on June 2, 1936, the presiding judge called a conference in his chambers, negotiations ensued, the judge suggested a reduction of $110,000, and the assistant corporation counsel offered such reduction. The plaintiff questioned the assistant corporation counsel's au-

thority to make this offer, on the ground that Mr. Kinsella, chairman of the board of assessors, had stated that he would not agree to a reduction in excess of $70,000, whereupon the assistant corporation counsel replied: "The corporation counsel's office is handling this case and is responsible for it and Mr. Kinsella cannot tell us how to run the corporation counsel's office." The plaintiff reported the proposed offer to Myers and Gross and advised them not to accept it, but told them it was for them to decide. They followed his advice, and the plaintiff then told the court and counsel for the city that the offer had been rejected. He was subsequently discharged as attorney, new counsel were engaged and the cases were later settled by them on the basis of a $75,000 reduction.

The jury could not reasonably have found that the plaintiff effected or obtained a reduction of $110,000 in the assessments. He obtained a proposition which was a conditional offer of a reduction. The rule is almost universal that an attorney who is clothed with no other authority than that arising from his employment in that capacity has no implied powers by virtue of his general retainer to compromise and settle his client's claim or cause of action, except in certain conditions of emergency. Either precedent special authority from the client or subsequent ratification by him is essential in order that a compromise or settlement by an attorney shall be binding on his client. 5 Am. Jur. 319. There is no evidence as to precedent special authority or subsequent ratification. We find nothing in the charter of the city of Hartford which gives an assistant corporation counsel authority to settle cases in which he appears for the city.

Therefore, upon this record the jury's finding in answer to the third interrogatory that the plaintiff obtained a legal offer from the city to reduce the

assessment to the extent of $110,000 cannot be sustained, unless the quoted statement of the assistant corporation counsel affords valid evidence that he had the authority to make the offer in question. It is well settled that authority of an agent cannot be proven by declarations of the agent. *Bailey* v. *Bobecki,* 117 Conn. 653, 654, 166 Atl. 677; *Voegeli* v. *Waterbury Yellow Cab Co.,* 111 Conn. 407, 411, 150 Atl. 303; *Taylor* v. *Commercial Bank,* 174 N. Y. 181, 191, 66 N. E. 726; 2 Am. Jur. 357. There was, therefore, no sufficient evidence to support the jury's finding that there was a legal offer to reduce the assessment by $110,000. This conclusion is fortified by the further fact that the plaintiff and his clients were charged with notice of the extent of the assistant corporation counsel's authority, he being the agent of a municipality. *Silliman & Godfrey Co.* v. *Westport,* 111 Conn. 510, 515, and cases cited at p. 516, 150 Atl. 502. In justice to the assistant corporation counsel it should be stated that he testified he had no authority to make a binding offer in behalf of the city of Hartford, that he in fact did not make the alleged offer, and denied that he made the statement, heretofore quoted, concerning Mr. Kinsella.

The plaintiff tried his case on the theory that if he failed to prove an express contract he could recover the reasonable value of his services, and produced much evidence in support of his claim on quantum meruit. The jury having expressly based its verdict upon a finding that the plaintiff had proved the express contract, and its substantial performance, we are not here concerned with the alternative claim. There remains, however, the question whether, where an attorney is employed on a contingent basis, it is an implied term of the contract that he will have a reasonable opportunity to perform, and if he is pre-

vented from doing so by a wrongful discharge, the contract has been broken and he is entitled to recover what he would probably have earned had his employment continued. That is the law stated in *Williams v. Philadelphia*, 208 Pa. 282, 57 Atl. 578. It is doubtful whether the evidence reasonably supports a conclusion that the plaintiff would probably have succeeded in ultimately obtaining a binding offer of a reduction of $110,000 in each assessment, but waiving that, we consider the proposition on its merits. The question then is whether, if an attorney has proved, or in a jury case, has offered evidence reasonably tending to prove, the facts upon which the proposition rests, he may recover the agreed fee, or is limited to the reasonable value of his services. Probably the majority of cases allow him to recover the agreed fee. This is the view held by Williston. 4 Williston, Contracts, § 1029, and cases there cited. The minority dissent has been reinforced by strong decisions in New York; *Martin v. Camp*, 219 N. Y. 170, 114 N. E. 46; in Minnesota, *Southworth v. Rosendahl*, 133 Minn. 447, 158 N. W. 717; and in South Dakota, *Ritz v. Carpenter*, 43 S. D. 236, 178 N. W. 877. See also 6 C. J. 725, 7 C. J. S. 1029. It is well settled that a client has the right to discharge his attorney and to substitute another at any time with or without cause and in spite of any contract; 30 Yale Law Journal 517, where it is said: "The reason of policy assigned is the necessity inherent in the relationship of absolute confidence of the client in his attorney; when such confidence ends, the relationship should end." See also 2 Thornton, Attorneys at Law, § 451. In *Martin v. Camp*, supra, it is stated (p. 174) "That the client may at any time for any reason or without any reason discharge his attorney is a firmly-established rule which springs from the personal and confidential

nature of the relation which such a contract of employment calls into existence . . . . it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract."

Under the majority rule, stated above, a discharge of the attorney without cause amounts to a breach of contract and the damages are the contract fee. The undoubted right to discharge would be a barren power if the contract fee is nevertheless to be paid. We see faults in the reasoning of many of the cases supporting their respective viewpoints, and recognize that the arguments are fairly well balanced. Our rules of policy support the minority view. An attorney at law is an officer of the court; a minister of justice. He is entitled to fair compensation for his services, but since, because of the highly confidential relationship, the client may discharge him even without just cause, he should receive reasonable compensation for the work he has done up to that point, and not the agreed fee he probably would have earned had he been allowed to continue in his employment. This rule is not unfair to the attorney. He will receive fair compensation for what he has done; his position as an officer of the court does not entitle him to receive payment for services he has not rendered.

Upon the evidence, and the law as we have stated it, the jury could not reasonably have found that the plaintiff was entitled to the verdict rendered.

It is unnecessary to discuss the other assignments of error.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.