[S. F. No. 16285. In Bank. Apr. 2, 1942.]

E. C. SALOPEK, Appellant, v. ROBERT SCHOEMANN et al., Respondents.

Torregano & Stark and M. C. Symonds for Appellant.

C. N. Vavuris and A. G. Simi for Respondents.

SHENK, J.—The plaintiff, as assignee of J. Maxwell Peyser, an attorney, commenced this action to foreclose a lien asserted under the written agreement of the defendant Robert Schoemann to pay for legal services. The attorney was discharged by his client on the same day the agreement was signed. The court decreed the enforcement of the lien to the extent of the reasonable value of the services performed to the time of discharge. On appeal by the plaintiff it is contended that the attorney was entitled to the enforcement of the lien to the full amount of the contract.

With one exception the correctness of the trial court's findings on material issues is not in dispute. The record shows that Max Schoemann died testate on June 2, 1937, a resident of the city and county of San Francisco, leaving no wife or issue. His next of kin were two brothers, the defendant, Robert Schoemann, who resided in New York; Otto Schoemann, who resided in Switzerland; and a sister Gertrude Horn, who resided in Germany. The will was holographic and was executed on December 13, 1934. It showed that as of that date the decedent was married, and in the will provision was made for a bequest to the wife. By its terms the residue was to be distributed, 10 percent to the brother Otto; 20 percent to the brother Robert; 10 percent to the sister Gertrude; 30 percent to children of Otto; ten percent and fifteen percent respectively to James and Eugene Schoemann, children of Robert Schoemann. Sam M. Schoemann, a cousin, who lived in California, was designated as executor and was left 5 percent of the estate for his services. The will offered for probate disclosed certain interlineations and alterations in pencil. The declaration of the marital status was stricken. The bequest to the wife was marked out with the notation, "Jennie died July 7, 1935." The words and figures "(20%) Twenty percent" in the bequest to Robert Schoemann were drawn through, without the insertion of any substituted figures. The bequest to the sister was apparently raised by alteration to 30 percent of the residue. The testator did not initial or sign the alterations.

The trial court in the present action found that on June 8, 1937, defendant Sam M. Schoemann filed a petition for pro-

bate of the will and for the issuance to him of letters testamentary; that on or about June 16, the defendant Robert Schoemann retained J. Maxwell Peyser as his attorney and by contract in writing dated June 21, 1937, agreed to pay him 33⅓ percent of his share of the estate in the event of settlement or 40 percent in the event of trial. A contest of the will was filed by Peyser in the name of Robert Schoemann on June 21, 1937. On that day Robert Schoemann by written notice to Peyser, rescinded the retainer agreement and substituted another attorney in the probate proceedings. The hearing on the petition for probate was noticed for June 22, 1937, and on that day Robert Schoemann filed his consent to the probate of the will reserving the right to apply to the court for "a construction of the erasures, alterations and interlineations" in the will. On July 2, 1937, the will was admitted to probate and letters testamentary issued to Sam M. Schoemann. On July 14, 1937, the executor filed a petition for instructions as to the correct construction of the will for the purpose of computing inheritance taxes and the proper administration of the estate. On January 19, 1938, an agreement was filed that Gertrude Horn should receive 16 percent of the estate, and that Otto and Robert Schoemann should each receive 12 percent of the estate. An order on the petition for instructions was based on this agreement. On February 23, 1938, the plaintiff, assignee of Peyser, commenced the present action to foreclose the lien on 33⅓ percent of Robert Schoemann's interest and obtained an order restraining the distribution of that interest. On February 28, 1938, a decree was entered ordering distribution to Robert Schoemann subject to the action herein and the restraining order. The 12 percent interest of Robert Schoemann amounts to approximately $15,000.

In addition to the foregoing the court found that there were no "false, negligent or fraudulent representations or statements to defendant Robert Schoemann as to the law or facts involved in said defendant's claim to receive a share of the estate of Max Schoemann, deceased, for the purpose of inducing said defendant to retain said J. Maxwell Peyser as his attorney or for any other purpose or at all." The court declared a lien on the funds held by the defendant Sam M. Schoemann for distribution to Robert Schoemann, to the extent of $300 which the court found to be the reasonable value of the services of Peyser to the time of his discharge. The

percentage provided by the contract of employment amounts to $5,000.

It is the plaintiff's contention that the foregoing quoted finding is entirely in the attorney's favor and that the only conclusion that can be drawn therefrom is that there was no justification for the rescission of the contract of employment; consequently that he was discharged without cause and was entitled to recover the full amount of the agreed fee (citing *Baldwin* v. *Bennett*, 4 Cal. 392; *Webb* v. *Trescony*, 76 Cal. 621 [18 Pac. 796]; *Bartlett* v. *Odd Fellows Savings Bank*, 79 Cal. 218 [21 Pac. 743, 12 Am. St. Rep. 139]; *Kirk* v. *Culley*, 202 Cal. 501 [261 Pac. 994]; *Elconin* v. *Yalen*, 208 Cal. 546, 549 [282 Pac. 791]; *Zurich G. A. & L. Ins. Co. Ltd.* v. *Kinsler*, 12 Cal. (2d) 98 [81 P. (2d) 913]; *Echlin* v. *Superior Court*, 13 Cal. (2d) 368 at 375 [90 P. (2d) 63, 124 A. L. R. 719].) The defendants contend that the quoted finding is not supported by the evidence; that the record discloses ample justification for the attorney's discharge, in which event the only question is the reasonable value of his services to the time of discharge.

There seems to be no divergence of authority to the effect that if an attorney is discharged for sufficient cause he is entitled to no more than the reasonable value of his services rendered prior to his discharge. The important and controlling question on the appeal is whether the quoted finding is supported by the evidence. When considered as a finding absolving the attorney of any fraudulent purpose or intent in inducing the contract, it is supported by the evidence; but if it be deemed a finding that his conduct would not justify his discharge it is unsupported.

Peyser testified that when Robert Schoemann consulted him and submitted the will to him, he advised that the proper procedure would be to file a contest of the will; that if the contest was successful Schoemann would be entitled to one-third of the estate, but that if the contest was unsuccessful and the court determined that the alterations should stand as in accordance with the intention of the testator to cancel the bequests stricken out, 40 percent of the estate would go into the residue and he would still have 13 percent of the estate. He testified that he also advised Robert Schoemann that if the contest was successful his sons' bequests would not be affected. It appeared that before Robert signed the agreement he informed Peyser that he would "rather be killed" than see

his boys lose the money left to them by the will. Peyser also testified that his intention was to file the contest as a preliminary step, and later to ask for an interpretation of the will. However the agreement signed by Robert Schoemann contained the following: "Second party [Peyser] agrees to institute and prosecute to final judgment all actions and proceedings necessary to declare invalid and to defeat the will of Max Schoemann, deceased, and to recover for First Party all of the estate of Max Schoemann to which he, is legally entitled."

It appears beyond dispute that when Peyser became acquainted with the facts and with his client's purpose to do nothing which would prevent his two sons from receiving their legacies, he prepared a contract in which he agreed to prosecute to final judgment all proceedings necessary "to declare invalid and to defeat the will of Max Schoemann, deceased." Peyser knew or should have known that if the will were declared invalid the sons would receive nothing thereunder. Peyser also advised Robert Schoemann that he would have him appointed administrator of the estate, when he knew that Robert was not a resident of the State of California. Peyser also prepared and filed the contest on behalf of Robert Schoemann in which the grounds of contest were alleged to be unsoundness of mind, infirmity of mind and body, lack of due execution, and "that said document by striking a line through the words and figures: '(20%) Twenty percent' in violation of law and not witnessed by the said testator; that said alteration purporting to be a bequest to the petitioner, Robert Schoemann was not the legal act of the said deceased, but was the result of undue influence of certain persons whose names are unknown to this contestant."

On the day the employment agreement was signed and the contract filed, Robert Schoemann showed the document to his sons. They told him that he had been misinformed by Peyser; that if the will were defeated they would receive nothing, and that he could not be appointed administrator because he resided in New York. That same day Robert Schoemann consulted another lawyer to verify these statements and was advised that Peyser had misinformed and misguided him. He immediately gave the notice of rescission.

It is true that the procedure to be pursued in protecting his client's interest is generally for the attorney to decide. (*Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler, supra.*) But

this does not mean that the client has no control over the objectives to be attained by the procedure to be adopted. As applied to the present case Robert Schoemann could properly and did in effect direct the attorney to do nothing which would jeopardize the legacies of his sons under the will. Notwithstanding this declared purpose on the part of the client, Peyser charted a course whereby he bound himself and his client to a procedure which if carried to a successful conclusion would defeat that purpose. The contract obligated the attorney to take the steps necessary to have the will invalidated. In this respect he had misinformed and misdirected his client concerning the legal effect of the facts and of the procedure which he had adopted. At the trial Peyser testified that in prescribing the procedure and in filing the contest his intention was merely "to make an appearance in court" or "to force a settlement." But this intention would not excuse the obvious appearances to the contrary resulting from the advice and course of conduct of the attorney. The fact that a different course may have been decided upon at a later date if Peyser's employment had continued would not affect the right of the client to rescind at once. He had the right to act immediately and did so act upon being properly advised that if the will were declared invalid, as contemplated by the contract of employment and the contest just filed, his rights and the rights of his sons would be jeopardized. ■ If an attorney misstates the legal effect of facts or of procedure to his client either through ignorance, carelessness or by mistake, and by his advice indicates and then pursues a course of action which would lead unquestionably to results contrary to the client's declared and proper objectives, the client is not bound to continue the attorney's employment. Indeed, the client may discharge his attorney at any time unless the attorney's power is coupled with an interest. No such interest appears here. (Sec. 284, Code Civ. Proc.; *Gage* v. *Atwater*, 136 Cal. 170 [68 Pac. 581] ; *Todd* v. *Superior Court*, 181 Cal. 406 [184 Pac. 684, 7 A. L. R. 938].) But if, as here, he has entered into a contract to compensate the attorney on a contingency basis and discharges him before the services have been completed, he takes the chance that the attorney may claim and establish that he was discharged without sufficient cause. On the other hand if, as here, it develops that the discharge was justified, the attorney has no cause to complain and is fully protected by payment of the reasonable value of his services rendered prior to his discharge.

The finding in question when taken as a finding which would lead to the conclusion that the discharge of the attorney was without sufficient cause, is incompatible with the facts as established without conflict in the evidence. Those facts support only a finding that there was sufficient cause for the discharge. Our conclusion in this respect may properly serve as a finding contrary to the finding of the trial court. (Const. art. VI, sec. 4¾; § 956a, Code Civ. Proc.) ▉ The trial court, however, correctly concluded that the plaintiff was entitled to enforce the lien to the extent of the reasonable value of the services performed by the attorney to the date of his discharge.

The judgment is affirmed.

Curtis, J., Edmonds, J., and Carter, J., concurred.

GIBSON, C. J., Concurring.—The judgment of the trial court should be affirmed on the ground that the compensation of an attorney employed under a contingent fee contract and discharged without cause should be measured by the reasonable value of the services performed, not by the fee fixed in the contract. The cases in this state allowing recovery of the full contract fee under such circumstances should be overruled. (*Webb* v. *Trescony,* 76 Cal. 621 [18 Pac. 796]; *Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler,* 12 Cal. (2d) 98, 102 [81 P. (2d) 913].) It is true that a majority of jurisdictions permit such recovery. (See cases collected in 136 A. L. R. 242.) But a strong and growing minority hold that under a contingent fee contract an attorney may recover only the reasonable value of services rendered by him prior to discharge. (*Cole* v. *Myers,* 128 Conn. 223 [21 A. (2d) 396, 136 A. L. R. 226]; *Hubbard* v. *Goffinett,* 253 Ky. 779 [70 S. W. (2d) 671]; *Pye* v. *Diebold,* 204 Minn. 319 [283 Pac. 487]; *Krippner* v. *Matz,* 205 Minn. 497 [287 N. W. 19]; *Martin* v. *Camp,* 219 N. Y. 170 [114 N. E. 46]; *Wright* v. *Johanson,* 135 Wash. 696 [233 Pac. 16, 236 Pac. 807]; *Cavers* v. *Old Nat. Bank & Union Trust Co.,* 166 Wash. 449 [7 P. (2d) 23], and other cases cited 136 A. L. R. 254.) Sound reasons of policy and justice support the minority rule and it should be followed by this court. It is recognized as a part of the ethical rules governing the legal profession that an attorney will not sue a client for a fee except to prevent injustice, imposition or fraud. (See American Bar Association, Canons of Professional Ethics, Canon 14.)

The relation of attorney and client is one of special confidence and trust, and the dignity and integrity of the legal profession demand that the interests of the client be fully protected. (*Tomblin* v. *Hill*, 206 Cal. 689, 693 [275 Pac. 941], 1 Thornton, Attorneys at Law, 238.) Without public confidence in the members of the legal profession, which is dependent upon absolute fairness in the dealings between attorney and client, courts cannot function in the proper administration of justice. And inherent in the relationship between attorney and client is the fact that the client must rely almost entirely upon the good faith of the attorney who alone can make an informed estimate of the value of the client's legal right and of the expense and effort necessary to enforce it. These considerations have given rise to the generally accepted rule that a client may discharge his attorney at any time with or without cause. (See *Gage* v. *Atwater*, 136 Cal. 170 [68 Pac. 581]; *Estate of Cazaurang*, 1 Cal. (2d) 712 [36 P. (2d) 1069], 7 C. J. S. 941.) But that is not enough. The right to discharge is of little value if the client must risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. The client may frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered. (See *Estate of Cazaurang, supra*.) The uncertain position of the client in such circumstances is illustrated by the record in the present case where the trial court found the discharge was without cause and this court has made a contrary finding and concluded the discharge was justified. Unless a rule is adopted allowing an attorney as full compensation the reasonable value of services rendered to the time of discharge, clients will often feel required to continue in their service attorneys in whose integrity, judgment or capacity they have lost confidence.

The principles involved are well stated in the recent case of *Cole* v. *Myers*, 128 Conn. 223 [21 A. (2d) 396, 136 A. L. R. 226]: "An attorney at law is an officer of the court; a minister of justice. He is entitled to fair compensation for his services, but since, because of the highly confidential relationship, the client may discharge him even without just cause, he should receive reasonable compensation for the work he has done up to that point, and not the agreed fee he probably

would have earned had he been allowed to continue in his employment. This rule is not unfair to the attorney. He will receive fair compensation for what he has done; his position as an officer of the court does not entitle him to receive payment for services he has not rendered.'' These considerations are compelling in their application to the case at bar where under the rule of the Zurich case, upon the finding of the trial court that the discharge was without cause, the attorney would recover $5,000 for a few hours' work found to be of the reasonable value of only $300.

Traynor, J., concurred.