134 N.J. Super. 222 (1975)
338 A.2d 888
IN THE MATTER OF THE ESTATE OF ADELA PAWLOVICH POLI, DECEASED.
Superior Court of New Jersey, Mercer County Court, Probate Division.
May 1, 1975.
Mr. Stephen Lichtenstein for petitioner (Messrs. Coleman, Lichtenstein, Levy & Segal, Esqs., attorneys).
Mr. Jesse Moskowitz for respondent,
TAMS, J.C.C.
This matter concerns the claim of a New Jersey attorney, who is also a deputy surrogate, for payment for legal services he rendered to the within estate *223 where a partial distribution is to be made. Petitioner was retained by the New York law firm of Wolf, Popper, Ross, Wolf & Jones, hereafter called Wolf, Popper, to represent them on a contingent fee basis. Wolf, Popper were and are attorneys-in-fact for a daughter of decedent herein, who is a beneficiary and resides in the U.S.S.R. The estate consists essentially of two parcels of real estate in Mercer County. One was taken by the State of New Jersey by condemnation which resulted in a price of $70,000 being paid for the taking. The estate was represented by another New Jersey law firm with respect to the condemnation, and certain fees were allowed by the court in this connection. The present petition is to set aside a portion of the balance remaining, to assure the payment of petitioner's claimed legal fee.
Defendant estate, now represented by still another New Jersey law firm which was substituted for petitioner, contends that petitioner was discharged for failure to properly pursue this matter and that no fee is due to him. Petitioner argues that a contingent fee agreement, whereby he was retained, entitles him to a percentage of the total estate and that the substitution of new counsel is an invasion and denial of his vested contractual rights.
The factual situation is somewhat complex respecting the dealings of petitioner and Wolf, Popper. Suffice it to say that petitioner had embarked on the work involved and had determined that decedent's widower was still alive and entitled to a life interest in the estate which will require waiting until that interest is extinguished before final settlement of the account. The life tenant is advanced in age but apparently still survives to this date. Petitioner claims that this was well understood by Wolf, Popper and that therefore he was not required to perform any additional services for the estate. Wolf, Popper had learned that because of his position as deputy Surrogate petitioner was unable to make any court appearances for them. Nevertheless, they made certain inquiries about the progress of petitioner *224 and, on failure to receive a response to their inquiries, discharged petitioner as attorney on a date which this court determines to be July 6, 1972.
The real question is, does an attorney in New Jersey have a vested right in the contractual relationship with a client arising out of a contingent fee agreement, and most particularly, where the services have not been completed?
No exact precedent is found in our New Jersey cases. In Stein v. Shaw, 6 N.J. 525 (1951), a disbarred attorney was involved and the holding of that case must be understood in that setting. In Niebuhr v. Sassadeck, 15 N.J. Misc. 285, 190 A. 783, aff'd 120 N.J.L. 183 (E. & A. 1938), the attorney's services were nearly complete on his discharge, and therefore quantum meruit was held not to be applicable in determining the amount of the fee.
The answer to this question may be partly learned from In re Kish, 52 N.J. 454 (1968). Not only is the subject matter of the cited case very similar, but the firm of Wolf, Popper was also involved as attorneys-in-fact for an estate where the beneficiaries were from Hungary. In an opinion by Justice Hall the court had occasion to pass on the question of the propriety of a contingent fee for the attorney for the estate, and stated:
In view of a court's inherent power to pass upon the reasonableness of fees charged in connection with any matter before it, any fee arrangement set forth in such a power of attorney is subject to judicial review. A court should make inquiry in these situations as to the existence of any such percentage arrangement, since the client is in a foreign country, is bound to be unfamiliar with appropriate fees and charges here, and cannot personally be heard. While the amount the specified percentage would produce in this case does not appear unreasonable in light of the extended litigation, the figure seems clearly excessive as far as future matters are concerned since, by reason of the criteria and procedure we have outlined adversary litigation will not ordinarily be required.
The proper practice is for the New Jersey attorney to apply to the court, pursuant to R.R. 4:107-3, for an allowance out of the distributee's share for his services and those of any out-of-state attorney, plus their expenses, based on the nature and extent of the actual services rendered with any percentage specified in a power *225 of attorney representing only the maximum amount which the court may allow. [at 472]
The Supreme Court has thusly stated that a contingent agreement made under the circumstances of the present case must first be reviewed by the court before the amount of counsel fee claimed pursuant to the agreement may be allowed. It is clear that such an agreement sets only the maximum amount of the fee, and the allowed sum will be dependent wholly upon the nature and extent of legal services rendered. Said another way, the measure of the fee is quantum meruit, defined in Black's Law Dictionary (4 ed. rev. among other things, as to entitling a claimant to "as much as he reasonably deserved to have for his labor". Also compare American Trial Lawyers Ass'n. v. N.J. Supreme Ct., 126 N.J. Super. 577 (App. Div. 1973), where the Appellate Division whose opinion was affirmed and further explained by Chief Justice Hughes, 66 N.J. 258 (1974), stated,
Attorneys have never had the right to enforce contractual provisions for more than a fair and reasonable fee. They are not business men, entitled to charge what the traffic will bear. [at 591]
Other jurisdictions have considered and determined comparable cases and they are helpful in understanding the modern judicial philosophy concerning this area of our law. In Fracasse v. Brent, 6 Cal.3d 784, 100 Cal. Rptr. 385, 494 P.2d 9 (1972), the Supreme Court of California reversed the existing law of that state and held that an attorney discharged without cause by his client could no longer recover as damages the full fee specified in the contract of employment without regard to the reasonable value of his services or the extent of work performed under that contract. The court concluded that
* * * a client should have both the power and the right at any time to discharge his attorney with or without cause. Such a discharge does not constitute a breach of contract for the reason that *226 it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate the contract at will. It would be anomalous and unjust to hold the client liable in damages for exercising that basic implied right. * * *
In summary, we hold that an attorney discharged with or without cause is entitled to the reasonable value of his services rendered to the time of the discharge. * * * We further hold that the cause of action to recover compensation for services rendered under a contingent fee contract does not accrue until the occurrence of the stated contingency.
Cogent language is also found in Cole v. Myers, 128 Conn. 223, 21 A.2d 396 (1941), where the Supreme Court of Errors stated:
An attorney at law is an officer of the court; a minister of justice. He is entitled to fair compensation for his services, but since, because of the highly confidential relationship, the client may discharge him even without just cause, he should receive reasonable compensation for the work he has done up to that point, and not the agreed fee he probably would have earned had he been allowed to continue in his employment. This rule is not unfair to the attorney. He will receive fair compensation for what he has done; his position as an officer of the court does not entitle him to receive payment for services he has not rendered.
Also see 136 A.L.R. 231, 254, which states:
There is an increasing tendency to hold that an attorney employed on a contingent fee contract who is discharged without fault on his part is not, as a general rule, entitled to recover on the contract, but may recover merely on a quantum meruit for the reasonable value of the services rendered.
The question of whether in New Jersey a client is authorized to discharge his attorney at any time with or without cause has not been passed on by any appellate court. The proposition, however, is contemplated in our rules, for DR 2-110 provides:

(B) Mandatory withdrawal.
A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, *227 and a lawyer representing a client in other matters shall withdraw from employment if:

* * * * * * * *
(4) He is discharged by his client
In this regard the only reported cases found in New Jersey are Hudson Trust & Savings Inst. v. Carr-Curran Paper Mills, 44 A. 638 (Ch. 1899), and Weibezahl v. Huber, 39 N.J.L.J. 334 (Cir. Ct. 1916), the latter citing the former, being an oral opinion by then Vice-Chancellor Pitney holding that "The client has at all times an absolute right to change his solicitor; but he cannot in my judgment, in so doing, deprive his solicitor of his right to compensation, or injure or destroy any lien which the solicitor has upon the fruit of his labor." These lower court decisions are quite compatible with the rationale of the Fracasse case from California and Cole from Connecticut.
It is stated in 7 C.J.S. Attorney and Client § 109 that
* * * because of the peculiar nature of the relation of attorney and client, the law goes even further and permits the termination thereof in a manner not recognized with respect to other contracts. Either party may dissolve the relation for cause, and the client has the absolute right to discharge the attorney and terminate the relation at any time even without cause, no matter how arbitrary his action may seem * * *
The holdings of Fracasse and Cole are not inconsistent with the cited New Jersey precedent and appear to be an accurate and definitive projection of our own judicial philosophy in this portion of our law. For these reasons the petitioner is found to have been duly discharged by Wolf, Popper and is entitled to recover for his legal services in quantum meruit. He shall submit an affidavit of services pursuant to R. 4:42-9 and this court will then allow an appropriate fee.