[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action instituted by the law firm of Beck 
Eldergill against Attorney Richard Nevins and his law firm to recover additional legal fees arising out of an unlawful termination case by a client which was eventually settled by Nevins for $262,475. Nevins is holding $79,000 in escrow pending the decision in this case.
Trial took place before this court on March 13, 25, 26, 27 and April 4, 1997. During trial various counts based on implied contract and CUTPA of the amended five count amended complaint dated September 18, 1995 were withdrawn, leaving count two which sounds in quantum meruit and count three which claims unjust enrichment.
I.
The following facts are not in dispute. CT Page 4887
On April 13, 1994, client, after a referral from an attorney in Massachusetts, entered into a written retainer agreement with Plaintiff to represent him in a claim against his former employer. The agreement called for an initial $75/hourly charge to be applied against a nonrefundable retainer of $5,000 and the payment of the greater of (1) a contingent fee of one third of the sum recovered, or (2) fees based on actual hours at rate of $185 per hour. This agreement superseded an earlier contractual agreement dated July 14, 1993.
The client initially dealt with attorney Eldergill of the Plaintiff firm but after she took maternity leave in October, 1994, he dealt with attorney Mercier of the Plaintiff. These attorneys conducted research, instituted suit and eventually in fall, 1994 received a series of offers for settlement, beginning with $50,000 and eventually increasing to $250,000 in December, 1994. Even though this last offer was within the range indicated to be acceptable by client, he rejected it despite Mercier's strong recommendation. Within a few days Mercier reported a new offer of $262,500 which was orally accepted by client on December 27, 1994. While the settlement papers were being prepared and exchanged, client sought the advice of another attorney R, who expressed interest in taking over the case. On January 16, 1995, client advised Mercier that he was rejecting the last offer, that he had consulted another attorney and requested bills for services rendered. On January 19, 1997, bills were sent to client based on Plaintiff's hourly rate of $185, totalling as to earlier CHRO investigations $1,683.50 and as to the subsequent litigation and negotiations $14,300.50, which latter bill netted out to $8,932.34 after adding costs of $1,131.84 and crediting payments of $6,500.
Within a few days thereafter, Plaintiff notified R and the employer's attorney that the firm was claiming a lien of $79,000 based on its contingent fee agreement and client's oral acceptance of the $262,500 settlement offer.
In early February, 1995, client consulted attorney Nevins who had previously represented him on other matters and whom he had originally consulted on his unlawful termination case, both as to the bills submitted by Plaintiff, its claimed lien and the underlying settlement. On February 23, 1995, client signed a retainer agreement with Nevins providing for a one-third contingent fee on the underlying case out of which he would be protected against any fee claims by Plaintiff. Nevins contacted Mercier who made a written demand upon him for Plaintiff's claimed fee of $79,000. Subsequently, Nevins proceeded to negotiate with the attorney for the CT Page 4888 employer and eventually the underlying case was settled for $262,475. Employer's attorney explained at trial that this figure was arrived at because the employer would not agree, after the extensive negotiations and the oral settlement reached through Plaintiff for $262,500, to settle at that figure or anything higher.
II.
A disputed issue at trial was whether Plaintiff's representation of client was terminated by Mr. Mercier after client refused to honor the settlement orally agreed upon or whether client discharged Plaintiff because he felt Mercier was overzealous in pushing him to settlement. The resolution of this issue is unimportant in view of Plaintiff's withdrawal of its contract claims. In any event, it is clear that the attorney-client relationship between Plaintiff and client ended on or about January 17, 1995. While there is some authority holding that an attorney withdrawing without good cause forfeits any claim to a fee, that type of withdrawal did not occur in this case.
III.
Plaintiff claims that Defendant violated the requirements of Formal Opinion 31 (Revised) of the Connecticut Bar Association by failing to promptly hold in escrow the proceeds of any settlement until its fee dispute with client was resolved. Without reaching the question of whether liability can be predicated on violation of an ethics opinion by a bar association, it does not appear that there was a violation of this formal opinion. When the first request was made on Defendant there was no settlement and he had no proceeds; as soon as he received funds from the actual settlement, he set aside $79,000 in escrow as requested.
IV.
By the end of trial, there appeared to be a basic agreement between the parties that the $79,000 being held in escrow by defendant would be applied in such a way that all of client's legal expenses incurred in the underlying case should be discharged. Thus the dispute centers on the division of tees to be made between Plaintiff and Defendant. Plaintiff claiming its research, expertise and negotiating abilities brought about an offer virtually identical to that eventually accepted; Defendant claiming that without his efforts the settlement with the employer would not have been reached and his work further involved negotiating around possible claims by R and the lien claims of Plaintiff. CT Page 4889
V.
In Riscassi and Davis P.C. v. Michael A. Peck, 17 CLT 43, (November 4, 1991, Hale, J.) the court in a similar dispute between law firms which had both worked on a case decided to apportion the fee based on quantum meruit or the reasonable value of the services rendered by each. The factors to be taken into consideration included, in addition to the hours spent by each, the factors set forth in Rule 1.5 of the Rules of Professional Conduct.
This approach has been sanctioned by our Supreme Court in Colev. Myers, 128 Conn. 223 (1941) and the Supreme Courts of other states. See May v. Seibert, (W.Va.) 264 S.E.2d 643 (1980).
In deciding the division of fees in this case, the following factors under Rule 1.5 have been considered and applied:
 (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
 (3) The fee customarily charged in the locality for similar legal servicer.
(4) The amount involved and the results obtained.
 (6) The nature and length of the professional relationship with the client.
(7) The experience, reputation and ability of the lawyers.
(8) Whether the fee was fixed or contingent.
Plaintiff claims it spent 86.4 hours on client's case; Defendant claims he spent 47 hours on the case. On one hand, Plaintiff had superior expertise, experience, and professional recognition in the employer law field, and had for all practical purposes brought the settlement offer to the level at which it actually settled; Plaintiff also researched and formed the issues and prepared and instituted the necessary litigation. On the other hand, Defendant had previously represented client in other matters, was required to research issues with which he was unfamiliar, protect client's interests as against the claims of R and Plaintiff as well in the basic action against the employer, and most important of all negotiate acceptance of the CT Page 4890 final settlement which client had already rejected when he was being represented by the Plaintiff.
Weighing all these factors it is concluded that Plaintiff and Defendant should divide the total contingent fee in the amount of $87,492 based on a contingent fee of one third on the $262,475 settlement as follows:
 Seventy (70%) percent to Plaintiff Thirty (30%) percent to Defendant
Applying these percentages as well as sums paid and costs expended leads to the following calculations.
Fees due Plaintiff 70% of $87,492 $61,244.40 Costs expended $1,134.84 ----------
$62,379.24 Less Payments received 8,500.00 ---------- Due Plaintiff $53,879.24
Judgment may enter for Plaintiff under the Second Count for $53,879.24 to be paid from $79,000 escrow fund held by Defendant.
Wagner, J.