[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is a dispute over attorney's fees. The plaintiff, Carl V. Pantaleo ("Pantaleo"), is an attorney licensed to practice in the State of Connecticut. On or about May 29, 1996, he entered into an agreement to represent the defendant, Jill E. Delmonico, now known as Jill E. Ritz ("Ritz"), who was then the defendant in an action for dissolution of marriage in the Superior Court for the Judicial District of Fairfield at Bridgeport, Ronald G.Delmonico v. Jill E. Delmonico, FA 96-0332967. Pantaleo continued to represent Ritz in that action until April, 1998, when Ritz terminated his services. This action followed.
This action commenced by complaint filed June 3, 1998, alleging breach of contract by the defendant. The plaintiff's amended petition, filed on September 22, 1998, is in two counts, the first alleging breach of contract and the second sounding in quantum meruit. The defendant filed her answer and counterclaim (the counterclaim was later withdrawn) on October 29, 1998, denying all material allegations and, by way of affirmative defense, alleging breach of contract by the plaintiff. On November 13, 1998, the plaintiff filed his answer, denying the affirmative defense. A hearing on the merits opened on May 11, 1999, continued on June 10 and June 11, and to August 6, 1999, when both parties rested.
 II
The agreement between the parties was in writing. Said agreement was entered into evidence as Plaintiff's Exhibit 2. By its terms, the plaintiff undertook to "endeavor to provide" the defendant "with first rate professional services as economically as possible," at a rate of $175.00 per hour for attorney's time CT Page 15449 and $60.00 per hour for paralegals.
Following Ritz' termination of his services, the plaintiff sent the defendant a bill for professional services rendered, dated May 1, 1998, in the amount of fifteen thousand, four hundred seventy dollars ($15,470.00) for 88.4 hours work @ $175.00 per hour (Defendant's Exhibit A). The plaintiff's basic claim is that the defendant has failed to make any payment, thus breaching the contract. The plaintiff also claims that pursuant to said contract he is entitled to attorney's fees and all other costs of collection incurred in seeking to enforce payment under said contract for services rendered the defendant in the dissolution matter. The plaintiff seeks an additional $17,200.00 to cover the costs of collection. Additionally, the plaintiff seeks late fees per the contract of $3,480.00 for a total claim of $36,150.80.
There is no claim by the defendant that she paid any monies to the plaintiff. Rather, she claims that she is not liable to the plaintiff "in the amount alleged" because the plaintiff breached the said contract. The defendant's claim is twofold; first, that the plaintiff failed to provide her with "first rate professional services", and, second, that the plaintiff materially breached the said contract by failing to forward an itemized bill, even after the defendant requested same; and by violating the contract provision that he would "not initiate any collection efforts until [the] bill becomes over 45 days past due."
In the course of the hearing on the instant matter, testimony was had from the plaintiff Pantaleo, the defendant Ritz and from attorney Christopher Vaugh, who represented the husband in the dissolution action. Numerous documents were entered into evidence, including the court file on the dissolution matter.
 III
Based on the evidence presented, it is clear that the dissolution was "difficult". It was contested and there was hostility between the parties. The most contentious issues centered around custody of the parties' minor child, Cody, and, pendente lite, mother's visitation and the husband's obligation to pay certain monthly bills of Ritz, covering living expenses, such as condominium fees, heat, light, telephone and cable. Between July, 1996, when the pendente lite orders were issued CT Page 15450 until March of 1998, the parties' attorneys expended considerable time and effort to ensure compliance with said orders, and late payment, by the husband, of bills for her living expenses was a continuing source of frustration for Ritz, as were difficulties she encountered in seeking to exercise her visitation rights. As to the custody issue, a custody evaluation report submitted December 2, 1996 (Plaintiff's Exhibit 14) recommended sole custody to father with supervised visitation for mother, and an updated custody evaluation report, dated January 8, 1998 (Plaintiff's Exhibit 13) recommended, inter alia, that mother's visits be clinically supervised. In the course of the dissolution action Ritz became increasingly dissatisfied with Pantaleo's representation and, particularly in the period January — March, 1998, the attorney-client relationship deteriorated. A breaking point was reached when a notice was issued by the court scheduling a special master's pretrial for March 27, 1998. Pantaleo made an effort to contact his client. Her telephone answering machine was not working and his effort to send her a written message (Plaintiff's Exhibits 5 46) did not evoke a response. On March 27, Pantaleo attended the pretrial but his client failed to appear. In her testimony in the instant matter, Ritz claimed she had received no notice from Pantaleo of the March 27 pretrial. The court concludes Ritz had notice of the special masters pretrial and of the necessity for the parties to appear. Not only do we have Plaintiff's Exhibits 5 46 to bolster Pantaleo's testimony, but we have Plaintiff's Exhibit 6, a copy of the identical notice addressed to Ritz at her address. (Prior to retaining Pantaleo, Ritz had filed a pro se appearance in the dissolution action and was on the mailing list for court notices). For the pretrial, and in the absence of his client, Pantaleo cobbled together a financial statement (Plaintiff's Exhibit 47A) and some proposed orders (Plaintiff's Exhibit 47B) which his client had not reviewed, and also managed to block the other side's motion for sanctions for his client's failure to appear. By letter dated March 31 (Plaintiff's Exhibit 11), Pantaleo reported on the pretrial, related the special masters' recommendations, and Pantaleo suggested to Ritz terms of settlement they could propose. He scolded her for "not being cooperative and failing to attend Court", informed her that they must be present for trial on April 20, 1998, and indicated he wished to see her late on the following Wednesday to prepare for court. Ritz' response was to file her appearance in the case in lieu of the appearance of Pantaleo on April 2, 1998 and shortly thereafter slip a copy of said appearance under Pantaleo's office door (Plaintiff's Exhibit 12). Both parties appear to agree that CT Page 15451 Ritz, by filing this appearance signified her intent to terminate Pantaleo's services.
 IV
An attorney is not prohibited from contracting with his client respecting his fees, Difrancesco v. Goldman,127 Conn. 389, 392-93. Indeed, before or within a reasonable time after commencing representation, a lawyer is expected to communicate to the client, in writing, the basis or rate of the fee to be charged and to what extent the client will be responsible for any court costs and litigation and the scope of the matter to be undertaken, Rules of Professional Conduct, Rule 1.5(b). The agreement should not be set aside or the agreed compensation withheld unless fraud has been perpetrated, undue influence exerted, material facts affecting the subject matter misrepresented or suppressed or advantage taken of a position of confidence and trust to obtain an unconscionable advantage over the party, Difrancesco v. Goldman, supra, at 393.
Based on the testimony and evidence presented, the court finds as follows:
(1) On or about May 29, 1996, the parties entered into a valid, binding contract under which Pantaleo agreed to provide legal services to Ritz in the marriage dissolution action and Ritz agreed to compensate Pantaleo for same at an agreed hourly rate.
(2) This agreement was in effect on or about April 2, 1998, when Ritz filed a pro se appearance "in lieu of" Pantaleo in the dissolution action.
(3) On April 6, 1998, Pantaleo was released by the court, (Ballen, J.) from his representation of Ritz.
(4) By writing dated May 1, 1998, postmarked May 21, 1998, (Plaintiff's Exhibit 7, Defendant's Exhibit A), Pantaleo forwarded a bill for professional services rendered in the dissolution action in the amount of $15,470.00, calculated on the basis of 88.4 hours of work at the rate of $175.00 per hour.
(5) On May 27, 1998, Ritz was served with the instant writ, summons and complaint, with a return date of June 16, 1998.
(6) By letters addressed to Pantaleo, dated June 10, 1998 CT Page 15452 (Plaintiff's Exhibit 3), July 2, 1998 (Defendant's Exhibit B), and July 19, 1998 (Defendant's Exhibit C), Ritz requested an itemization of the said bill and other information.
(7) On June 16, 1998, the Court, (Ballen, J.), entered a judgment of dissolution of the said marriage, incorporating a separation agreement between Ritz and her former spouse, a provision of which was that each party shall be solely responsible for payment of their respective legal fees.
(8) On or about October 7, 1998, Pantaleo provided Ritz, through counsel, with an itemized billing summary, which covered the 84.8 hours he claimed expended on the dissolution matter, as well as an additional 4.6 hours expended in winding up his representation of Ritz and an additional 21.9 hours logged in the instant matter.
 V
By way of special defense, the defendant claims that the plaintiff Pantaleo is in violation of the contract between the parties by virtue of his failure to provide the defendant with first rate professional services. The pertinent contract provision reads: "This firm and each employee of it will endeavor to provide you with first rate professional services as economically as possible." Nowhere in the written agreement is "first rate" defined, nor, in the course of the hearing on the instant matter, was a definition of first rate proffered to the court.
Based on the testimony and evidence presented, including the court file of the dissolution action (Plaintiff's Exhibit 1) and the testimony of attorney Vaugh, and as a threshold finding, the Court finds that Pantaleo's representation of the defendant was well within the range of competence displayed by lawyers with ordinary training and skill in the field of family law in the superior court in the period 1996-98. By the time Ritz terminated Pantaleo's services, the contours of the likely outcome of the dissolution matter were clearly discernible. This was most notable with reference to the painful issues of custody and visitation, but also with regard to division of property and alimony. This likely outcome was actualized in the judgment of dissolution entered on June 16, 1998. The court finds it highly unlikely, in the circumstances of the dissolution matter, that Pantaleo could have obtained, by any course of action, an outcome CT Page 15453 more favorable to his client than that reached several weeks after his termination. The court finds further that the plaintiff' contract commitment to "endeavor to provide" Ritz "with first rate professional services" with no explanation of what constitutes "first rate" is merely an acknowledgment by Pantaleo of Ritz' right to challenge the quality of his representation. The court finds that the defendant Ritz has failed to establish, by a fair preponderance of the evidence, her special defense that Pantaleo breached the contract between the parties by failing to provide her first rate professional representation in the dissolution action.
 VI
The defendant also claims, by way of special defense, that the plaintiff, Pantaleo, violated the agreement between the parties by virtue of his timing in bringing the instant suit. The defendant asserts that doing so violated the provision of the agreement which reads: "I will not initiate any collection efforts until your bill becomes over 45 days past due.". Pantaleo counters that Ritz violated the agreement between the parties in that she failed to "arrange to pay the final bill". The agreement reads, in pertinent part, "You may terminate our relationship at any time by advising the firm in writing, arranging to pay the final bill, and provide written instruction for the disposition of your files."
"It is well settled that a client has the right to discharge his attorney and to substitute another it any time with or without cause, and in spite of any contract," Cole v. Myers,128 Conn. 223, 229. But an attorney is entitled to fair compensation for his services, Id., at 230. Such contract will be sustained if found to have been fairly made and no unconscionable advantage taken of the client by the attorney, DiFrancesco v. Goldman,127 Conn. 387, 393.
The defendant terminated Pantaleo's services on or about April 2, 1998, by filing her appearance "in lieu of" his. Pantaleo obtained leave of the court to cease representation on April 6, 1998. By letter postmarked May 21, 1998, Pantaleo mailed Ritz his bill for services rendered. This bill included a general summary of work performed, and stated the following: "Itemized billing will be sent upon written request for same". In so stating, Pantaleo unilaterally went beyond the contract provision which read: "Time records are kept in every file and are CT Page 15454 available for your inspection at your request" and Ritz was entitled to request and receive such itemization prior to tendering payment. Ritz requested such itemization by letters, dated June 10, July 2 and July 19, 1998. Pantaleo did not comply until on or about October 7, 1998, when this collection matter was already in suit. The defendant claims that the plaintiff violated the agreement between the parties by initiating this suit before the bill was over 45 days past due. The court is not persuaded. The court finds that the plaintiff's action in initiating this suit was not a violation of the agreement between the parties such as to relieve the defendant of liability, but rather, merely bars the plaintiff from imposing the contractual "late fee" prior to November 7, 1998. (The pertinent contract provision being: "There is a 1.5% late fee on all bills more than 30 days past due"). Once the defendant received an itemized bill, she had the choice of paying said bill within thirty days or of challenging said bill and abiding by the outcome of said challenge.
The court finds that the plaintiff has established, by a fair preponderance of the evidence, that the defendant Ritz is in violation of the agreement between the parties by reason of her failure to pay the plaintiff for his services rendered.
 VII
The defendant, at closing argument, conceded that the plaintiff had done some work on her behalf and was perhaps entitled to some compensation. Based on the evidence presented, including the court file of the dissolution action, the court concludes that the agreed-upon fee of $175.00 an hour was reasonable, that the itemized expenditure by the plaintiff through April 2, 1998 was supported by the evidence.
Once Ritz had terminated his services, on April 2, 1998, Pantaleo had no obligation, under the contract, to perform further services. His appearance in court on April 6th and his contacts with successor counsel had to do with his obligations as an attorney and an officer of the court. The court will disalow the plaintiff's claim for 4 hours for work between April 2nd and April 16, 1998. The court deducts from the amount claimed the sum of $700.00 for 4 hours work on the dissolution matter performed following April 2, 1998. With that adjustment, and pursuant to the agreement between the parties, the defendant Ritz is liable to the plaintiff Pantaleo, in the amount of fourteen thousand, CT Page 15455 seven hundred seventy ($14,770.00) dollars for services rendered her in the dissolution action. The record establishes that the plaintiff appeared in court at least twelve times, attended a custody evaluation meeting at Milford court, prepared and filed various pleadings, prepared financial affidavits, interrogatories, a separation agreement, attended pretrial conferences, drafted letters to the husband's counsel, engaged in a continuing struggle to ensure that the husband met his obligations to pay various living expenses of the defendant, engaged in telephone discussions with other counsel, met with and telephoned his client, went to the Trumbull probate office, the Easton and Branford town clerks' offices to check records. In her affidavit filed in family court on June 16, 1998, the defendant, under liabilities, listed a balance due of $15,000.00 to the creditor, Carl V. Pantaleo.
 VI
The plaintiff Pantaleo also claims that the defendant Ritz is liable, under the contract between the parties, for all costs of collection, including attorney's fees at the rate of $175.00 an hour. Unless a contractural agreement clearly specifies payment of attorney's fees and costs, these items may not be recovered as damages, Marsh, Day Calhoun v. Solomon, 204 Conn. 639, 651.
Here, the agreement reads in pertinent part: "By signing this commitment letter, you are also agreeing that you will pay reasonable attorney's fees and all other costs of collection in the unlikely event that it is necessary to commence legal action to secure overdue payments of billings. You agree to pay the same hourly rate noted on page one to myself or my attorneys to collect any past due monies after default."
"It is to be noted that the plaintiff derives [his] right to recover an attorney's fee in this case from [the] contract and not from a claim for damages", Storm Associates, Inc. v.Baumgold, 186 Conn. 237, 245. However, having modified the phrase, "attorney's fees" with the word "reasonable", the plaintiff, the drafter of the said agreement, is entitled to no presumption of reasonableness. It is left to the trier to make a determination of what, in this instance, is reasonable attorney's fees. In support of his claim the plaintiff submitted an itemized bill (Plaintiff's Exhibits 49 and 50) during the course of his testimony and was available for cross examination on the bill. The plaintiff claims total attorney's fees of $32,305.00, of CT Page 15456 which the sum of $15,470.00 was claimed for services rendered in the dissolution and $16,835.00 represents attorney's fees claimed as part of the cost of collection. The court has reviewed the claim regarding the attorney's fees component of the cost of collection, taking into account the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the results obtained and the fee customarily charged in the locality for similar legal services, and has determined that the sum of $10,000.00 is a reasonable fee for the attorney's services component of the cost of collection.
The court finds that the plaintiff has established by a fair preponderance of the evidence that the defendant, Jill E. Ritz, has breached the agreement between the parties by virtue of her failure to pay the plaintiff's attorney's fees for services rendered in Ronald G. Delmonico v. Jill E. Delmonico, FA 96-0332967, Judicial District of Fairfield at Bridgeport, in the amount of fourteen thousand, seven hundred seventy ($14,770.00), plus late fees of 1.5% per month from November 7, 1998 through July 31, 1999.
The court also finds that the plaintiff has established, by a fair preponderance of the evidence, that the defendant, Jill E. Ritz, under said agreement, is responsible for costs of collection, including reasonable attorney's fees, which reasonable fees the court has determined to be in the amount of ten thousand ($10,000.00) dollars plus costs.
Accordingly, judgment may enter in favor of the plaintiff, Carl V. Pantaleo, and against the defendant Jill E. Delmonico, now known as Jill E. Ritz, in the amount of twenty four thousand, seven hundred seventy ($24,770.00) dollars, plus late fees as stated above and costs of three hundred sixty five and eighty one hundredths ($365.80) dollars.
By the Court
Downey, J.