DONALD L. ALTSCHULER *v.* MOLLY S. MINGRONE
(AC 26103)

DiPentima, Harper and West, Js.

Argued September 28—officially released December 19, 2006

*Donald L. Altschuler*, pro se, with whom, on the brief, was *Richard Altschuler*, for the appellant-appellee (plaintiff).

*Richard W. Callahan*, for the appellee-appellant (defendant).

*Opinion*

WEST, J. The plaintiff, Donald L. Altschuler, appeals from the judgment of the trial court determining that the defendant, Molly S. Mingrone, owed him $20,248.15 for his services as her attorney. The defendant has filed a cross appeal. On appeal, the plaintiff claims that the court should have determined that the defendant owed him more than $20,248.15. On cross appeal, the defendant claims that the court improperly rendered judgment in favor of the plaintiff. As to both the appeal and cross appeal, we affirm the judgment of the trial court.

On May 25, 1994, the defendant suffered personal injuries when her motor vehicle was struck by a vehicle driven by Zdzislaw Brodzik. One week later, the defendant hired the plaintiff to represent her in connection

with the accident and entered into an agreement to pay him on a contingent fee basis. The agreement provided that the plaintiff would receive one third of the gross amount recovered. The plaintiff subsequently reached a settlement with Brodzik's insurance carrier in May or June, 1995, for the policy limit of $100,000, and the defendant accepted the settlement. Although the plaintiff had earned a fee of $33,333, he agreed to accept only $27,000 and to defer acceptance of the $6333 balance until he resolved the defendant's claim for underinsured motorist coverage against her insurance carrier.

The plaintiff spent seventy-five hours working on the defendant's underinsured motorist claim. On February 6, 1996, the defendant discharged the plaintiff and pursued that claim herself. She notified the plaintiff by letter that, upon settlement of her claim, she would hold sufficient funds in escrow pending a determination as to the final balance of the plaintiff's fee. In May, 1996, the defendant reached a settlement with her insurance carrier for the policy limit of $195,000. Although she owed the plaintiff $6333 in connection with the Brodzik settlement, and the plaintiff had received no fee for the work he performed on the underinsured motorist claim, the defendant offered the plaintiff only $6000 to settle his claim against her. The plaintiff rejected that offer and, on July 9, 1996, filed an application for a prejudgment remedy in the amount of $71,333, representing the $6333 due from the Brodzik settlement, plus $65,000, which was one third of the defendant's underinsured motorist settlement. The court granted the application for a prejudgment remedy in the amount of $6333. The plaintiff appealed to this court, and we affirmed the judgment in a memorandum decision. See *Altschuler* v. *Mingrone*, 45 Conn. App. 927, 696 A.2d 1059 (1997).

The plaintiff filed an amended complaint against the defendant on October 23, 1996, but it was not until November 9, 2004, that a trial was held before the court.

In its memorandum of decision, the court found that the defendant owed the plaintiff $6333 in connection with the Brodzik settlement. The court then explained that the plaintiff was entitled to receive a reasonable fee for his work on the defendant's underinsured motorist claim. As to that claim, the court found that the plaintiff had performed "substantial work" but that the defendant also had made a significant contribution in reaching a settlement after she discharged the plaintiff. The court explained that the defendant's insurance carrier "was not prepared to pay the policy limit in March of 1996 . . . . Nevertheless, the defendant was able to effect a settlement for the policy [limit] in May of 1996." The court consequently determined that a reasonable fee for the plaintiff's work on the underinsured motorist claim was $11,250, which represented his seventy-five hours of work on that claim multiplied by his hourly rate of $150. The court therefore rendered judgment in favor of the plaintiff for $17,583, plus $2665.15 in interest on the $6333 due from the Brodzik settlement, for a total of $20,248.15. The plaintiff then filed this appeal, and the defendant cross appealed.

I

We first address the plaintiff's appeal. The plaintiff claims that the court improperly concluded that $11,250 was a reasonable fee for the plaintiff's work on the defendant's underinsured motorist claim. We disagree.

Our Supreme Court long ago explained that an attorney is entitled to a reasonable fee for his services. "An attorney at law is an officer of the court; a minister of justice. He is entitled to fair compensation for his services, but since, because of the highly confidential relationship, the client may discharge him even without just cause, he should receive reasonable compensation for the work he has done up to that point, and not the agreed fee he probably would have earned had he been

allowed to continue in his employment." *Cole* v. *Myers*, 128 Conn. 223, 230, 21 A.2d 396 (1941).

"It is well established that a trial court calculating a reasonable attorney's fee makes its determination while considering the factors set forth under rule 1.5 (a) of the Rules of Professional Conduct. . . . These factors include the time and labor spent by the attorneys, the novelty and complexity of the legal issues, fees customarily charged in the same locality for similar services, the lawyer's experience and ability, relevant time limitations, the magnitude of the case and the results obtained, the nature and length of the lawyer-client relationship, and whether the fee is fixed or contingent. . . . When awarding attorney's fees, the court must consider all of the factors and not seize on one to the exclusion of the others." (Citations omitted; internal quotation marks omitted.) *Rodriguez* v. *Ancona*, 88 Conn. App. 193, 202, 868 A.2d 807 (2005).

In conducting our review of the plaintiff's claim, we recognize that the reasonableness of a particular fee is a question of fact. "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Surrells* v. *Belinkie*, 95 Conn. App. 764, 767, 898 A.2d 232 (2006).

In support of his claim, the plaintiff argues that the court failed to consider all of the factors that are relevant in determining the reasonableness of the fee that

the plaintiff earned for his work on the defendant's underinsured motorist claim and that the court gave undue weight to the number of hours that the plaintiff spent on that claim. We are unpersuaded. The memorandum of decision indicates that the court did not seize on the time spent by the plaintiff to the exclusion of all other factors. In particular, the court explained that despite the plaintiff's efforts to settle the underinsured motorist claim, the defendant's insurance carrier would not pay the policy limit. Approximately three months after the defendant discharged the plaintiff, however, the defendant succeeded in settling her claim for the policy limit. The contrast between the result obtained by the plaintiff at the time of his discharge and the result later obtained by the defendant was clearly significant to the court in finding that the plaintiff would receive as fair compensation his hourly rate of $150 for the seventy-five hours that he had worked.

The plaintiff further argues that the court should have treated the defendant as an attorney and apportioned one third of the underinsured motorist settlement, or $65,000, between the plaintiff and the defendant, because a fee dispute between attorneys would be resolved in that manner. The plaintiff contends that the court's award to him of $11,250, which is approximately 17 percent of $65,000, is inconsistent with the court's finding that the plaintiff had performed "substantial work . . . ." We are unpersuaded. Even if the court explicitly had apportioned $65,000 between the plaintiff and the defendant, the memorandum of decision indicates that the plaintiff would not have received a higher fee. The court found that a reasonable fee for the plaintiff's contribution to settling the underinsured motorist claim was equal to his hourly rate for the seventy-five hours that he had spent on that claim because the defendant had made a significant contribution that actually achieved the result she sought. The court was not

required to assign percentages to the efforts of the plaintiff and the defendant. Because there is evidence in the record to support the court's finding that a reasonable fee for the plaintiff's work on the underinsured motorist claim was $11,250, we conclude that that finding was not clearly erroneous.

## II

We next address the defendant's cross appeal. The defendant claims that the court improperly rendered judgment in favor of the plaintiff. We disagree.

The defendant argues that the plaintiff was precluded from recovering any legal fees beyond the $27,000 that he had accepted in June, 1995, because the contingent fee agreement violated rule 1.5 (c) of the Rules of Professional Conduct. That rule provides in relevant part that "[a] contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated. . . ." The defendant contends that the contingent fee agreement failed (1) to specify the percentage or percentages of the recovery that would accrue to the plaintiff as his fee in the event of settlement, trial or appeal, and (2) to disclose whether court costs and litigation and medical expenses were to be deducted before or after the contingent fee was calculated. We are unpersuaded. The contingent fee agreement clearly provided that the plaintiff would receive one third of the gross amount recovered and that the defendant was to pay "all expenses incurred in the preparation of [her] claim," including court costs. The use of the word "gross" unambiguously indicated

that the plaintiff's fee would be calculated first, and that court costs and litigation expenses then would be deducted from the remaining balance. The absence of any distinction among the possible events of settlement, trial or appeal indicated that the fee of one third of the recovery applied, regardless of the course of the litigation. Finally, rule 1.5 (c) does not require a contingent fee agreement to refer to medical expenses. We accordingly conclude that the contingent fee agreement in the present case did not violate rule 1.5 (c).

The defendant also argues that the court made a clearly erroneous finding that the plaintiff had spent seventy-five hours working only on the underinsured motorist claim because that amount of time included the time that the plaintiff worked on the Brodzik settlement. We are unpersuaded. At trial, the plaintiff provided a two page summary of the work he had performed on the underinsured motorist claim, estimating that he had spent seventy-five hours on that claim. Because the plaintiff's summary constitutes evidence in support of the court's finding as to the number of hours that the plaintiff worked on the underinsured motorist claim, we conclude that that finding was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.