# HORACIANA J. ROJAS, et al., Appellants/Plaintiffs
## v.
# TWO/MORROW IDEAS ENTERPRISES, INC., et al.,
## Appellees/Defendants

S. Ct. Civ. Nos. 2008-0071, 2008-0089

Supreme Court of the Virgin Islands

July 30, 2010

685

ALEX M. MOSKOWITZ, ESQ., A.J. Weiss & Associates, St. Thomas, USVI, *Attorney for Appellant.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and BRADY, *Designated Justice.*[1]

## OPINION OF THE COURT

(July 30, 2010)

HODGE, C.J. Appellant A. Jeffrey Weiss, Esq., (hereafter "Weiss") appeals from an August 5, 2008 Superior Court Order modifying his attorney's fees and costs in the underlying personal injury action, as well as an October 22, 2008 Order further reducing his fees and costs.[2] For the reasons that follow, we shall vacate in part and reverse in part the Superior Court's August 5, 2008 Order, vacate its October 22, 2008 Order as moot, lift the stay ordered by this Court on January 22, 2009, and remand the matter to the Superior Court for further proceedings consistent with this decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 30, 1999, Horaciana J. Rojas (hereafter "Rojas"), Nancy N. Greene (hereafter "Greene"), and five minor children were injured when a truck driven by Lander G. Alfred (hereafter "Alfred") struck their vehicle. Shortly after the incident, Rojas, Greene, and Elena Salomon (hereafter "Salomon") — the mother of one of the injured minors — retained Weiss to represent all seven accident victims in a personal injury action against Alfred and his employer, Chuck Kline Water Services (hereafter "Chuck Kline"). Pursuant to their respective retainer agreements — which Rojas and Greene executed on June 29, 1999, and Salomon signed on July 23, 1999 — Weiss agreed to jointly represent Rojas and Greene (collectively "adult plaintiffs") as well as the five minors (collectively "minor plaintiffs") on a contingency fee basis, in

---

[1] Justice Ive Arlington Swan is recused from this matter. The Honorable Julio A. Brady has been designated in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

[2] Although identified in the case caption, respectively, as appellants and appellees, none of the plaintiffs or defendants in the underlying negligence action have filed a notice of appeal in this matter, submitted appellate briefs, or otherwise participated in the proceedings before this Court.

which Weiss would receive thirty-three and one-third percent of any settlement or other recovery in the litigation, as well as obtain reimbursement for all costs and expenses incurred during the course of his representation. (App. at 1, 4, 7.)

The adult and minor plaintiffs, represented by Weiss, initiated civil proceedings against Alfred and Chuck Kline in the Superior Court on September 7, 1999. As the litigation progressed, Weiss discovered that Alfred possessed few assets and Chuck Kline had been operating at a loss and appeared "on the verge of bankruptcy with little to nothing in the way of unencumbered assets." (Appellant's Br. at 2 (citing App. at 10-22.).) Significantly, Chuck Kline's insurance policy only provided coverage up to $25,000.00, with Alfred lacking any insurance independent of Chuck Kline.

On October 26, 2004, the parties, with the assistance of a mediator, attempted to settle the dispute. At the conclusion of the mediation session, Chuck Kline's insurer agreed to not only pay the adult and minor plaintiffs the maximum $25,000.00 authorized by Chuck Kline's policy, but also offered to provide an additional $12,000.00 in monetary compensation. Moreover, Chuck Kline agreed to pay the plaintiffs an additional $19,200.00 in monthly installments over the course of five years, representing a total potential recovery of $56,200.00. After the plaintiffs accepted this offer, the parties memorialized the mediated settlement in a written agreement. (App. at 28-30.) The mediated settlement, however, was silent as to how the settlement proceeds would be apportioned between the two adult and five minor plaintiffs.

Rojas, Greene, and Salomon met with Weiss on November 15, 2004 to discuss how to allocate the recovery among the plaintiffs. At this meeting, the three adults agreed to divide the settlement proceeds based on the amount of each plaintiff's medical expenses. Under this arrangement, Rojas and Greene would respectively receive $32,466.66 and $16,233.34, while each of the five minors would obtain a $1,500.00 recovery. Moreover, Weiss agreed to not assess costs against the minor plaintiffs' portion of the settlement, although he would still charge the minors his thirty-three and one third percent contingent fee and deduct fees owed to Dr. James Nelson (hereafter "Dr. Nelson"), their treating physician, for medical expenses.

On December 14, 2004, the adult and minor plaintiffs petitioned the Superior Court to approve, on behalf of the minor plaintiffs, the October

26, 2004 mediated settlement agreement and the distribution plan, as mandated by the former 15 V.I.C. § 801 *et seq*, which was in effect at the time the parties agreed to the settlement.[3] After the Superior Court expressed concern about the amount of attorney's fees Weiss charged the minor plaintiffs, Weiss agreed to reduce the minors' contingency fee to fifteen percent. The Superior Court subsequently appointed a guardian *ad litem* to represent the minors' interests, and held a status conference on February 13, 2006. At this status conference, the guardian *ad litem* informed the Superior Court that the adult plaintiffs were concerned about the $19,200.00 recovery that Chuck Kline had agreed to pay in installments, and the Superior Court indicated to Weiss that it felt the attorney's fees charged to the adult plaintiffs may also be excessive.

After numerous meetings with the adult plaintiffs, Weiss filed a motion to withdraw as counsel on June 16, 2006 on the basis that the statements by the guardian *ad litem* and the Superior Court at the February 13, 2006 status conference had led his clients to believe that they were entitled to more money than provided for in the settlement. The Superior Court denied Weiss's motion in a July 30, 2007 Order, and required Weiss to submit a new distribution plan for the adult and minor plaintiffs. Weiss submitted a revised plan on August 7, 2007, which allocated $3,000.00 to each of the minor plaintiffs instead of the prior $1,500.00, and correspondingly reduced Rojas and Greene's shares to, respectively, $27,466.66 and $13,733.34.[4] However, the revised distribution plan charged each minor $450.00 in attorney's fees — representing fifteen percent of the total expected recovery — and $500.00 for medical expenses payable to Dr. Nelson.

The Superior Court, in an August 5, 2008 Order, rejected Weiss's revised plan on the grounds that the requested attorney's fees and costs were not reasonable for an award of costs to a prevailing party pursuant to 5 V.I.C. § 541 and that his contingent fee was unconscionable. In its August 5, 2008 Order, the Superior Court further adopted its own distribution plan for the settlement proceeds, which reduced Weiss's total

---

[3] Pursuant to Act No. 7150, the Virgin Islands Legislature repealed chapter 51 of title 15 in its entirety, effective May 1, 2010.

[4] In accordance with the retainer agreement, the distribution plan provides that the portion of the attorney's fees corresponding to the future installment payments will be deferred until the adult plaintiffs recover those installment payments. (App. at 76-77.)

attorney's fees from $19,066.27 to $7,728.49, increased each minor's share of the settlement proceeds that had already been deposited in the Superior Court's Registry to $4,424.76, and ordered that Rojas and Greene would each receive $22,123.83 of the already-deposited funds. Moreover, the Superior Court held that, of the installment portion of the settlement that had not yet been deposited into the Superior Court's Registry, Rojas and Greene would each receive $1,021.00 while each minor plaintiff would receive $204.20. Furthermore, the August 5, 2008 Order seemingly disallowed any payments to Dr. Nelson.

Weiss filed a notice of appeal on August 8, 2008, which this Court docketed as S. Ct. Civ. No. 2008-0071. While Weiss's appeal was pending in this Court, the Superior Court, noting "that an error occurred in calculating the total funds currently deposited in the Registry of the Court," (App. at 89), issued an October 22, 2008 Order further reducing Weiss's attorney's fees to $6,246.00, reducing each minors' immediate recovery to $2,150.26, and ordering immediate payments of $10,751.33 to both Rojas and Greene. The October 22, 2008 Order further held that the $17,700.01 in installment payments that had not yet been deposited in the Registry "shall be disbursed when the entire amount is deposited in the Court's Registry," and directed Dr. Nelson to "submit an itemized list of medical services provided to Plaintiffs . . . failing which the outstanding balance currently being deposited in installments will be evenly distributed to Plaintiffs." (App. at 96.) On November 11, 2008, Weiss filed a second notice of appeal, which this Court docketed as S.Ct. Civ. No. 2008-0089.

This Court, in a January 22, 2009 Order, granted in part and denied in part Weiss's November 10, 2008 motion for a stay of the Superior Court's August 5, 2008 and October 22, 2008 Orders pending appeal, requiring that the Superior Court not disburse from its Registry the $12,820.27 that represents the difference between the costs and attorney's fees sought by Weiss and those awarded to Weiss in the October 22, 2008 Order. *See Rojas v. Two/Morrow Ideas Enterprises, Inc.*, S. Ct. Civ. No. 2008-0071, 2009 V.I. Supreme LEXIS 6 (V.I. Jan. 22, 2009). Moreover, this Court, in an October 23, 2009 Order, consolidated both of Weiss's appeals.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

██ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ." V.I. Code Ann. tit. 4 § 32(a). Because the Superior Court's August 5, 2008 and October 22, 2008 Orders, at the time they were entered, fully adjudicated the issue of Weiss's attorney's fees and costs and disposed all other issues in the underlying matter, each qualifies as a final appealable order. *See V.I. Gov't Hospitals and Health Facilities Corp. v. Gov't*, 50 V.I. 276, 279 (V.I. 2008) ("A final judgment, decision, or order is one that ends the litigation on the merits and leaves nothing to do but execute the judgment."). Moreover, because Weiss filed his respective notices of appeals on August 8, 2008 and November 11, 2008, each appeal is timely filed.[5] *See* V.I.S.Ct.R. 5(a)(1) ("[T]he notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from . . .").

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). However, the Superior Court's assessment of the reasonableness of an attorney's contingent fee is

---

[5] This Court, in its January 22, 2009 Order, explained that Weiss has standing to appeal the Superior Court's August 5, 2008 and October 22, 2008 Orders:

> Multiple appellate courts have held that an attorney has standing to appeal an adverse attorney's fees award in his own name. *See, e.g., Dietrich Corp. v. King Resources Co.*, 596 F.2d 422, 424 (10th Cir. 1979); *Angoff v. Goldfine*, 270 F.2d 185, 186 (1st Cir. 1959). Likewise, this Court finds that [Weiss] has met these minimum requirements for standing, since the Superior Court's orders, which this Court is capable of reversing, have reduced [Weiss]'s contingent fee. This Court recognizes that some courts have questioned the propriety of allowing an attorney to maintain such an appeal in his own name without the consent of his clients. *See, e.g., Willis v. Government Accountability Office*, 448 F.3d 1341, 1344 (Fed. Cir. 2006). However, the failure of [Weiss]' clients to object to [Weiss]s appeal mollifies such concerns. *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 614-15 (6th Cir.2007); *Mather v. Board of Trustees of Southern Illinois University*, 317 F.3d 738, 741 (7th Cir.2003). Accordingly, this Court finds that [Weiss] has standing to appeal the Superior Court's orders. . . .

*Rojas*, 2009 V.I. Supreme LEXIS 6, at *3.

reviewed only for abuse of discretion. *See Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 419 (3d Cir. 1995).

## B. The Superior Court Had Jurisdiction to Review Weiss's Contingent Fee

Weiss, as his primary issue on appeal, contends that the Superior Court lacked jurisdiction to review the reasonableness of the mediated settlement agreement, distribution plan, or his contingency fee agreement with respect to the adult plaintiffs. Specifically, Weiss argues that "all the Superior Court was authorized, by [15 V.I.C. § 801 *et seq.*], to decide was whether the settlement and proposed distribution plan should be approved as being in the best interest of the minor children," (Appellant's Br. at 7), and that "[t]he Superior Court has absolutely no basis to unilaterally interfere with the private contractual relationship between [Weiss] and the adult plaintiffs . . . since here there was no case or controversy before it with regard to the attorney's fees allocated to (and approved by) the adult plaintiffs[] in the distribution plan." (Appellant's Br. at 12.)

■ We disagree. Although Weiss claims in his appellate brief that the mediated settlement agreement was only before the Superior Court with respect to the minor plaintiffs, Weiss, in the statement of facts preceding his August 7, 2007 revised distribution plan, expressly notified the Superior Court "that Mrs. Rojas, Mrs. Greene and Ms. Salomon . . . clearly indicated their desire to repudiate their previous acceptance of the mediated settlement agreement," that "the adult plaintiffs all expressed a uniform belief that . . . they were no longer willing to wait for their money; and . . . that it was the firm's responsibility to get them more money," that "at the March 9, 2006 meeting *all of the plaintiffs* initially claimed not only that they no longer wanted the settlement, *but that they had never wanted it*, and had somehow been 'forced' into it," that as of March 14, 2007 "they were still adamant that they wanted more money and that the firm should somehow get it for them, and that they wanted it *now*, not over time," (J.A. at 74-75 (emphasis in original)), and, as of August 7, 2007, "they are reluctant to accept less for their share of the settlement proceeds." (J.A. at 77.) Moreover, Weiss's filing further disclosed that "Mrs. Rojas, Mrs. Greene, and Elena Salomon . . . met with [Weiss] . . . in an attempt to discuss a resolution to this matter in light of the Court's expressed concerns, *the adult plaintiffs' contractual obligations to the firm*, and the economic reality that defendants had only

$25,000.00 of insurance coverage and were on the verge of bankruptcy." (J.A. at 74 (emphasis added).) Accordingly, even if the plaintiffs initially asked the Superior Court to review the mediated settlement agreement as it pertained to the minors, Weiss's subsequent representations to the Superior Court unquestionably authorized the Superior Court to also consider the reasonableness of the terms of both the mediated settlement agreement and the contingency fee arrangement with respect to the adults.

■ Nevertheless, the Superior Court's jurisdiction to review the reasonableness of the mediated settlement agreement as it pertained to the minor plaintiffs also granted it the inherent authority to reduce Weiss's fees and the compensation awarded to the adult plaintiffs. Although Weiss contends that "[t]he Superior Court's only authority under the petition pending before it was to determine whether or not the settlement to the minors was fair and reasonable," (Appellant's Br. at 7), Weiss fails to explain how the Superior Court, upon finding that the settlement proceeds allocated to the minors were inadequate, could have exercised its jurisdiction to ensure a "fair and reasonable" allocation to the minors without also reducing either Weiss's fee, the funds apportioned to the adult plaintiffs, or both, given that the eventual potential recovery from the settlement was limited to a maximum $56,200.00. *See Hoffert v. General Motors Corp.*, 656 F.2d 161, 165 (5th Cir. 1981), *cert. denied*, 456 U.S. 961, 102 S. Ct. 2037, 72 L. Ed. 2d 485 (1982) (holding that reasonableness of contingency fee is properly before trial court when plaintiff requests approval of minor's settlement agreement, since "[a]part from the total settlement amount, the 33 1/3% attorneys' fee award was the single most important factor bearing on the amount of [minor's] recovery."). Additionally, multiple appellate courts have held that, when a litigant requests that a court approve or manage a settlement, the court's jurisdiction encompasses the entire settlement and is not exhausted until all funds in the court's registry have been fully distributed. *See Cappel v. Adams*, 434 F.2d 1278, 1280-81 (5th Cir. 1970) (holding when attorney invokes court's equitable jurisdiction to approve settlement, jurisdiction encompasses all claims against funds in registry of court); *Garrett v. McRee*, 201 F.2d 250, 253 (10th Cir. 1953) ("But the jurisdiction of the court is not exhausted so long as the funds are in the registry of the court . . . and where an attorney recovers a fund in a suit under a contract with a client providing that he shall be compensated only out of the fund he creates, the court . . . has power to fix the attorney's compensation and

direct its payment out of the fund."). *See also Elder v. Metropolitan Freight Carriers, Inc.*, 543 F.2d 513, 518 (3d Cir. 1976) ("Here, where the court had been asked for an order of distribution, it had the power to direct that the defense lawyers distribute to plaintiff's counsel only the fee permitted by the local rule.") (citing *Garrett*, 201 F.2d at 253). Therefore, despite Weiss's contention to the contrary, the Superior Court possessed jurisdiction to review and, if necessary, modify the distribution of settlement proceeds, including attorney's fees.

## C. The Superior Court Erred When it Reduced Weiss's Attorney's Fees and Costs

Weiss further argues that, even if the Superior Court had jurisdiction to review the entire mediated settlement and his contingent fee agreements, this Court should nevertheless reverse the Superior Court because (1) it reviewed the reasonableness of the mediated settlement and distribution plan, including the contingent fee agreement, under the wrong legal standard; and (2) its finding that Weiss's contingent fee was unconscionable lacks a factual basis. We agree and, for the reasons stated below, hold that the Superior Court abused its discretion when it reduced Weiss's attorney's fees in this matter.

### 1. The August 5, 2008 Order Did Not Evaluate the Settlement In Light of the Best Interest to the Minors or Review the Contingent Fee Under the Correct Test for Reasonableness

As explained in the prior section, the Superior Court obtained jurisdiction to evaluate and modify the entire settlement when the plaintiffs petitioned the Superior Court to accept the settlement for the minor plaintiffs pursuant to 15 V.I.C. § 801 *et seq.*, and also possessed the authority to review the settlement when Weiss's August 7, 2007 filing disclosed that the adult plaintiffs believed they were entitled to more money and were otherwise questioning the terms of the agreement. Accordingly, the Superior Court could have permissibly reviewed the settlement agreement and distribution plan, including Weiss's contingent fee, under two distinct legal standards.

It is well established that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad*

694

*litem.*" *In re Abrams & Abrams, P.A.,* 605 F.3d 238, 247 (4th Cir. 2010) (quoting *Salmeron v. United States,* 724 F.2d 1357, 1363 (9th Cir. 1983)). "In determining whether the amount of settlement to the minor is appropriate, the court ordinarily considers" three factors:

(1) Injuries. Settlement should be proportional to injuries sustained by the minor. The court will look closely at the offer of settlement to determine if the amount is justified. . . .

(2) Defendant tortfeasor's funds. Where defendant tortfeasor is adequately insured to cover plaintiff's claims, defendant's assets do not generally concern the court. However, if, for example, defendant in an automobile accident is insured for $15,000 and settlement is proposed at policy limits, but the minor's claim could be reasonably valued at $50,000, counsel must adequately explain to the court why the $15,000 settlement is appropriate. Reasonable explanations include (a) that defendant has few, if any, reachable assets, (b) that the minor was contributorily negligent, or (c) that an early settlement at $15,000 is in the best interests of the minor.

(3) Multiple claimants. In actions where there are multiple claimants, the court must ensure that the proportion of settlement proceeds awarded the petitioning minor is fair and representative. The issue is most dramatically presented in the common automobile accident involving a parent and child (or parents and children) injured by another driver. A lump-sum settlement offer may be made to the family — the issue then arises as to how to divide the settlement among family members. Where a strong family relationship exists, favoring the parent's share over the child's share appears innocent and allows the parent to spend proceeds in the best interests of the child. However, awarding a higher proportion to the parent rather than the child would most likely increase attorney fees and therefore result in a lower net recovery to the family. . . .

53 AM. JUR. TRIALS 1, § 313 (collecting cases.)

■ Here, the Superior Court clearly failed to evaluate the mediated settlement agreement under this standard, even though the agreement had been brought before it pursuant to a petition for approval under 15 V.I.C. § 801 *et seq.* Significantly, the August 5, 2008 Order contains no

discussion — let alone factual findings — with respect to (1) whether the August 7, 2007 distribution plan's proposed $3,000.00 allocation to each minor, minus Weiss's contingent fee and expenses, was justified given the extent of each minor's injuries; (2) whether the total value of the settlement, minus Weiss's contingent fee and expenses, is adequate given the extent of the plaintiffs' injuries and the defendants' funds; and (3) whether the settlement proceeds allocated to the minor plaintiffs relative to the adult plaintiffs was fair, representative, or furthered the best interests of the minors, taking into account the impact Weiss's contingent fee and expenses would have on the total net recovery. Rather, the Superior Court reduced Weiss's contingent fee based solely on its finding of unconscionability and its erroneous belief that Weiss had sought an award of prevailing party attorney's fees and costs pursuant to 5 V.I.C. § 541 — a statute with no applicability to this matter[6] — and changed the allocation of proceeds among the minor and adult plaintiffs without providing any written explanation. Therefore, this Court vacates the Superior Court's August 5, 2008 Order's rejection of the plaintiffs' distribution plan and instructs the Superior Court to apply the correct legal standard for evaluating a petition to approve a settlement involving a minor pursuant to 15 V.I.C. § 801 *et seq.* on remand.

■ However, because the Superior Court was vested with jurisdiction to review the reasonableness of Weiss's contingency fee agreement independently of the plaintiffs' petition, this Court must also consider whether the Superior Court erred when it reduced Weiss's contingency fee on the ground that it was unreasonable. In Virgin Islands courts, Rule 1.5 of the American Bar Association's Model Rules of Professional Conduct, made applicable pursuant to Supreme Court Rule 203,[7] establishes the factors a court must consider when assessing the reasonableness of a contractual fee agreement between a lawyer and a client:

---

[6] Section 541, in addition to being limited to prevailing parties, expressly provides that its fee-shifting provisions do not apply to non-frivolous personal injury actions.

[7] "The Supreme Court, in furtherance of its inherent and statutory powers and responsibility to supervise the conduct of all attorneys who are admitted to practice before it, hereby adopts the ABA's Rules of Professional Conduct and Rules of Disciplinary Enforcement, superseding all of its other rules pertaining to disciplinary enforcement heretofore promulgated." V.I.S.CT.R. 203(a).

A lawyer shall not make an agreement for, charge, or collect an un-reasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

 (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

 (2) the likelihood, if apparent to the client, that the accep-tance of the particular employment will preclude other employment by the lawyer;

 (3) the fee customarily charged in the locality for similar legal services;

 (4) the amount involved and the results obtained;

 (5) the time limitations imposed by the client or by the cir-cumstances;

 (6) the nature and length of the professional relationship with the client;

 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

 (8) whether the fee is fixed or contingent.

ABA MODEL R. PROF. COND. 1.5(a). *See also Krause v. Rhodes*, 640 F.2d 214, 219 (6th Cir. 1981) (holding that eight factors found in ABA Code of Professional Responsibility govern whether a contingent fee agreement is reasonable).

 While the Superior Court considered and made findings with respect to some of these factors when it erroneously applied section 541 to the plaintiffs' petition, the eight Rule 1.5(a) factors do not fully overlap with the test employed by the Superior Court. Notably, the Superior Court did not consider Weiss's opportunity cost, the fees customarily charged for similar legal services in the Virgin Islands, Weiss's experience, reputation, and ability, or the results Weiss obtained given the facts of the case and the resources of the defendants.[8] Consequently, because the

---

[8] In·its August 7, 2008 Order, the Superior Court noted that "[t]he action was settled through mediation and, according to [Weiss]'s calculations, Plaintiffs stand to recover less than half of the amount agreement (sic) upon in settlement." (J.A. at 84.) However, even assuming without deciding the Superior Court's finding that the plaintiffs are only likely to

Superior Court has failed to apply the correct legal standard pursuant to either 15 V.I.C. § 801 *et seq.* or Rule 1.5(a), this Court also vacates the Superior Court's finding that Weiss's contingent fee is not reasonable.

### 2. *The Factual Record Does Not Support a Finding of Unconscionability*

■ Finally, this Court must determine whether the Superior Court's characterization of Weiss's contingent fee agreement as unconscionable establishes a separate basis for reducing Weiss's attorney's fees. "[A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115, 119 (2007).

■ In its August 5, 2008 Order, the Superior Court found Weiss's contingent fee "arrangement unconscionable because the matter arises from one transaction and settlement negotiations were conducted on behalf of the group, not per individual." (App. at 85.) However, the Superior Court cites to no authority — and this Court can find none — for the proposition that separate contingent fee agreements in cases involving multiple plaintiffs are inherently unconscionable, particularly when — as here — the retainer agreements each provide for the same contingent fee. Therefore, given the overwhelming case law approving of thirty-three and one third percent contingency fees in personal injury cases,[9] this Court reverses the Superior Court's August 5, 2008 Order with respect to its finding of unconsionability.[10]

---

recover less than half of the total mediated settlement is correct, the Superior Court has nevertheless failed to determine whether recovering half of the settlement proceeds is a good or bad result given the difficulty of the case and the assets of the defendants.

[9] *See, e.g., Gee v. Salem Day Care Center,* 47 A.D.3d 478, 850 N.Y.S.2d 64, 64 (2008); *Altschuler v. Mingrone,* 98 Conn. App. 777, 911 A.2d 337, 340-341 (2006); *Matter of Estate of Weeks,* 627 N.E.2d 736, 737 (Ill. App. Ct. 1994).

[10] On appeal, Weiss also contends that the Superior Court lacked jurisdiction to enter its October 22, 2008 Order amending its August 5, 2008 Order because Weiss had filed a notice of appeal of the August 5, 2008 Order on August 8, 2008 and thus purportedly divested the Superior Court of jurisdiction over the matter. However, because this Court vacates in part and reverses in part the Superior Court's August 5, 2008 Order and remands the case to the Superior Court for further proceedings, it is not necessary for this Court to review the Superior Court's October 22, 2008 Order except to vacate it as moot.

## III. CONCLUSION

Since the plaintiffs petitioned the Superior Court to approve the mediated settlement agreement on behalf of the minors, and Weiss notified the Superior Court that the adult plaintiffs were dissatisfied with the settlement and believed they were entitled to more money, the Superior Court had jurisdiction to review the mediated settlement agreement as it pertained to both the adult and minor plaintiffs and to evaluate Weiss's contingency fee agreement. However, the Superior Court had no basis for deeming the contingent fee agreement unconscionable and failed to consider the mediated settlement agreement, distribution plan, and contingency fee agreement in light of the correct legal standard. Accordingly, this Court reverses the August 5, 2008 Order's finding of unconscionability, vacates its disapproval of the mediated settlement agreement and distribution plan, and vacates its finding that Weiss's contingent fee agreement was not reasonable. Finally, this Court vacates the Superior Court's October 22, 2008 Order as moot and lifts the stay ordered on January 22, 2009 so that the Superior Court may, on remand, consider the mediated settlement agreement, distribution plan, and contingent fee agreement under the appropriate legal standards and otherwise proceed in a manner consistent with this Opinion.