# IN THE MATTER OF THE GUARDIANSHIP OF LILLIAN R. SMITH, Ward

S. Ct. Civ. No. 2012-0120

Supreme Court of the Virgin Islands

May 23, 2013

BEVERLY A. EDNEY, ESQ., St. Croix, USVI, *Pro se.*

KATHRYN J. DEPREE, ESQ., St. Thomas, USVI, *Attorney for Appellee Alston Smith.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 23, 2013)

HODGE, *Chief Justice.* Beverly A. Edney, Esq., appeals from the Superior Court's October 10, 2012 Order, which denied her request for attorney's fees, as well as several earlier orders that partially formed the basis for that denial. For the reasons that follow, we will reverse the October 10, 2012 Order, and remand this matter to the Superior Court to address Edney's attorney's fees claim.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

This matter came before the Court in two prior appeals. In *In re Guardianship of Smith*, 54 V.I. 517 (V.I. 2010), Edney appealed from an October 22, 2009 Order striking her appearance as counsel for Lillian Smith — whom the Superior Court had declared incompetent in an oral August 13, 2008 Order and a written September 11, 2008 Order — and ordering her to pay attorney's fees to Alston Smith, who had filed the petition to declare Lillian incompetent and been subsequently appointed

as her guardian. This Court, in its November 15, 2010 Opinion, held that the Superior Court lacked jurisdiction to declare Lillian incompetent, and vacated the August 13, 2008, September 11, 2008, and October 22, 2009 Orders — as well as all other orders in the matter entered to that date — as nullities. *Id.* at 532.

On November 18, 2010, Alston filed a new petition to declare Lillian incompetent, and Edney entered her appearance on Lillian's behalf. The Superior Court conducted a hearing on December 16, 2010, declared Lillian incompetent, and appointed Alston as her temporary guardian. In a December 23, 2010 Order, the Superior Court directed Edney to show cause as to why she should be allowed to continue to represent Lillian in the proceedings. Ultimately, in a February 3, 2011 Order, the Superior Court memorialized its decision to declare Lillian incompetent in writing, appointed Alston as her permanent guardian, and held that Edney could not continue to represent Lillian because it "found [Lillian] to have been incompetent to retain an attorney since February 2008." (J.A. 191.) On February 14, 2011, Edney filed a motion for reconsideration, which the Superior Court denied on July 6, 2011.

On March 3, 2011, Kim Lyons — one of Lillian's relatives who opposed Alston's petition — filed a notice of appeal, which this Court docketed as S. Ct. Civ. No. 2011-0016, and Edney subsequently filed a notice of appeal as well. However, on December 5, 2011, Alston informed this Court that Lillian had died on November 30, 2011. This Court, in a December 6, 2011 Order, required the parties to brief the issue of whether the appeal should be dismissed as moot in light of Lillian's death. In her brief, Edney did not dispute that Lillian's death mooted many of the issues on appeal, but argued that Lillian's death did not affect her right to be compensated for services already performed on Lillian's behalf in contesting Alston's petition. On January 20, 2012 — apparently recognizing that the Superior Court's orders had only prohibited future representation and did not address compensation for past representation — Edney filed with this Court a document captioned "Motion to Supplement the Record to Include Attorney's Fees and Cost Due Counsel for Lillian R. Smith," which requested that she receive $150,685.84 in attorney's fees and costs for her prior representation of Lillian. This Court, in a February 13, 2012 Order, dismissed the appeal as moot, specifically noting that Edney had never requested such compensation from the Superior Court, but stating that it did not appear that anything

precluded Edney from seeking such compensation as part of the Final Accounting in the guardianship matter.

On February 17, 2012, Edney filed a motion for compensation with the Superior Court, which Alston opposed. The Superior Court held a hearing on September 24, 2012, and orally denied Edney's motion on the grounds that Edney represented that Lillian retained her on February 1, 2009, but the Superior Court found Lillian had been incompetent since February 2008, and therefore "was not competent to hire or retain Attorney Edney as her attorney in these guardianship proceedings." (J.A. 85.) The Superior Court memorialized its decision in an October 10, 2012 Order, and Edney timely filed her notice of appeal on October 30, 2012.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ." V.I. CODE ANN. tit. 4, § 32(a). Since the Superior Court's October 10, 2012 Order fully adjudicates the issue of attorney's fees and costs, and all other issues in the underlying matter have been resolved, we possess jurisdiction over this appeal. *See Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 691 (V.I. 2010) (orders entered fully adjudicating the issue of attorney's fees and costs, and disposing of all other issues are final appealable orders).

This Court reviews the Superior Court's ruling on a motion for attorney's fees and costs for abuse of discretion. *Simpson v. Golden*, 56 V.I. 272, 277 (V.I. 2012). "To the extent the review implicates an interpretation of law, however, we review that interpretation *de novo*." *Id.*

### B. Edney's Entitlement to Attorney's Fees

As the parties and the Superior Court recognized at the September 24, 2012 hearing, former section 844 of title 15 of the Virgin Islands Code governed Edney's application for attorney's fees.[1] That statute provided

---

[1] Pursuant to Act Nos. 7150, 7174, 7241, and 7267, the guardianship provisions in the former chapter 51 of title 15 were repealed effective October 1, 2011, and replaced with the Virgin Islands Uniform Probate and Fiduciary Relations Code. Nevertheless, section 2 of Act No. 7150 provides that the Superior Court may use its discretion to continue to apply the old

that "[w]hen a guardian is appointed for an insane person, the court shall make an allowance, to be paid by the guardian, for all reasonable expenses incurred by the ward in defending himself against the proceeding." Former 15 V.I.C. § 844 (1996 & 2009 Supp.). Since former section 844 — which was among the original provisions of the Virgin Islands Code — was patterned after similar statutes adopted in other jurisdictions, we consider decisions rendered by the highest courts of those jurisdictions when determining how to interpret this provision. *Chinnery v. People*, 55 V.I. 508, 519 n.6 (V.I. 2011) (quoting *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 47 V.I. 430, 442 (V.I. Super. Ct. 2006)).

▇▇ Every appellate court to interpret a provision identical or similar to former section 844 has held that "reasonable expenses" include attorney's fees. *See, e.g., In re Rathbun's Estate*, 44 R.I. 101, 115 A. 705, 706 (1922); *In re Appeal of Farnum*, 107 Me. 488, 78 A. 901, 902 (1911); *Magoon v. Fitch*, 16 Haw. 13, 14-15 (1904); *Barbo v. Rider*, 67 Wis. 598, 31 N.W. 155, 160 (1887). Therefore, our inquiry is limited to determining whether Lillian's competency to enter into a contract with Edney is in any way relevant to whether Edney may receive compensation under the statute. We hold that it is not. Even if we were to assume — without deciding[2] — that the Superior Court had the authority to find that Lillian had been incompetent since February 2008, Lillian's competency to enter into a contract with Edney is wholly irrelevant, because former section 844 established a statutory exception to the common law of contracts.[3]

---

statutory provisions to current cases. Since the Superior Court invoked former section 844 in its analysis, it implicitly made this determination.

[2] In their appellate briefs, Edney and Alston address numerous additional issues that are not necessary to our disposition of this appeal, including (1) whether the Superior Court could properly declare Lillian incompetent retroactively to February 2008, and (2) whether the law-of-the-case doctrine precludes Edney from challenging any of the Superior Court's prior competency rulings as part of this appeal. Since we hold that Lillian's competency to enter into a contract with Edney is irrelevant to whether Edney is entitled to receive compensation under former section 844, we decline to address any of these collateral issues as part of this appeal.

[3] At the September 24, 2012 hearing, Alston's counsel alleged that Lillian never actually retained Edney, and that Lyons had arranged Edney's representation. But as we have repeatedly cautioned, unsworn representations of counsel as to factual matters do not constitute admissible evidence. *Henry v. Dennery*, 55 V.I. 986, 994 (V.I. 2011). In any event, the Superior Court implicitly rejected this argument when it held that Lillian lacked the capacity to

■ As explained above, since the Legislature patterned former section 844 from other jurisdictions, we must consider how those other jurisdictions interpreted the same provisions before its adoption in the Virgin Islands. *Chinnery*, 55 V.I. at 519 n.6. Those jurisdictions held that statutes similar or identical to former section 844[4] authorize attorney's fee awards (1) on appeal from an order establishing a guardianship, and (2) in proceedings to revoke a guardianship, without regard to whether the proceeding results in the guardianship being terminated. *See, e.g., Farnum*, 78 A. at 901 (permitting attorney's fees for appeal that resulted in guardianship order being affirmed); *Magoon*, 16 Haw. at 15-16 (authorizing attorney's fees for petition to terminate guardianship that was ultimately dismissed); *Barbo*, 31 N.W. at 160 ("[T]he county court, on a proper showing, should adjust the reasonable expenses . . . *in that court, in the circuit court, and in this court*, (which includes services of attorneys), and will direct the guardian to pay the same out of the estate of his ward." (emphasis added)). Clearly, an individual who has been declared incompetent lacks the capacity to enter into a contract for retained counsel to appeal that decision to an appellate court, or to move to set aside the decision in a collateral proceeding before the trial court; nevertheless, these courts have authorized payments under their local equivalents to former section 844.[5]

---

enter into a contract with Edney, and Alston waived further consideration of the issue by failing to raise it in his appellate brief. *See* V.I.S.CT.R. 22(m) ("Issues that were . . . raised or objected to but not briefed . . . are deemed waived for purposes of appeal . . . .").

[4] Like former section 844, former section 1968 of Hawaii's Civil Laws provided that "[w]hen a guardian shall be appointed for an insane person, or spendthrift, the Judge shall make an allowance to be paid by the guardian, for all reasonable expenses incurred by the ward in defending himself against the complaint." *Magoon*, 16 Haw. at 14 (internal quotation marks and citation omitted). Similarly, the pertinent Maine statute provided that "[w]hen a guardian is thus appointed, the judge shall make an allowance, to be paid by the guardian from the ward's estate, for all his reasonable expenses in defending himself against complaint," *Farnum*, 78 A. at 901 (internal quotation marks and citation omitted), while the Wisconsin statute read that "when a guardian shall be appointed for an insane or incompetent person or spendthrift, or for any non-resident, the court shall make an allowance, to be paid by the guardian out of the estate of his ward for all reasonable expenses incurred by the ward in defending himself against the petition." *Barbo*, 31 N.W. at 160 (internal quotation marks and citation omitted).

[5] In his appellate brief, Alston cites several cases from other jurisdictions that post-date the adoption of former section 844. Since these cases were decided after the Legislature enacted

■ Perhaps more importantly, the Superior Court's interpretation of former section 844 — if sustained — would be inconsistent with the Legislature's clear intent to encourage putative wards to obtain retained counsel to defend against petitions seeking to declare them incompetent. As the Supreme Court of Maine explained in a decision permitting an attorney to obtain compensation from a ward's estate for services rendered during an unsuccessful appeal of the guardianship order,

> Proceedings . . . for the appointment of a guardian to a person over 21 years of age, involve not only the proposed ward's right to manage his own estate, but also the custody of his person. It needs no argument, therefore, to emphasize the necessity that such person should have the fullest opportunity to defend himself against such proceedings. A person in the shadow of an application that he be put under guardianship because [he is] incompetent to manage his own estate would necessarily find it difficult, if not quite impossible, to procure the prompt and valuable services of others necessary to protect and defend him, unless there was some provision for the payment of the reasonable expenses thus incurred, other than that applicable to the general creditors of his

former section 844, they are of limited assistance in determining how the Legislature intended for us to interpret former section 844. *Chinnery*, 55 V.I. at 519 n.6.

Nevertheless, the authorities Alston cites actually support the proposition that a ward's mental incapacity is wholly irrelevant to the issue of whether the ward's attorney should receive compensation. For example, Alston cites to *In re Guardianship of Allen*, 50 Ohio St. 3d 142, 552 N.E.2d 934 (1990), for the proposition that "a ward could not bind a guardianship's estate based upon contract unless it was ratified by a guardian." (Appellee's Br. 6.) While the Ohio Supreme Court did make this statement, it proceeded to find that "[t]he court of appeals . . . erred when it characterized [the ward's] alleged obligations to pay [the attorney's] fees and expenses as contracts" because "it is settled law in Ohio and in a number of other states that any debt arising out of the services of an attorney to a ward is in the nature of necessities," which may be recovered even in the absence of a contract. 552 N.E.2d at 937. Significantly, the Ohio Supreme Court emphasized "that the alleged mental competence of [the ward] is irrelevant to the question of the validity of the fees and expenses that the trial court denied [the attorney]." *Id.*

Likewise, in *In re Guardianship of Bockmuller*, 602 So.2d 608, 610 (Fla. Ct. App. 1992), the court did not reverse the grant of attorney's fees on the basis that the attorney lacked authorization to represent the ward in the proceedings, but because "[t]he attorney's fees charged by [the attorney] for time spent for his continued attempts to accomplish a result that the trial court had previously ruled against, only served to deplete [the ward's] estate and served no benefit whatsoever to [the ward] or her estate." In other words, the *Bockmuller* court simply found that the requested attorney's fees were not reasonable — a wholly separate issue.

452

estate. But the provisions of our statute, enacted to be sure for the protection of the ward's estate from improvident contracts, will, if enforced, render the ward utterly helpless to defend himself, and powerless to procure the assistance of others. It is provided in [the guardianship statute] that when an application for a guardian is made, and notice thereon ordered, the applicants may cause a copy thereof to be filed in the registry of deeds in the county, and, if a guardian is appointed, all contracts, except for necessaries, made by the ward after said filing, are void. In a word, then, a person against whom an application for a guardian has been made is thereby necessarily hindered and impeded in defending himself against it, and he may be, under the provisions of the statute, rendered utterly helpless and defenseless in the premises. It was to afford a remedy for such condition that the statute was enacted, and it should be construed, if permissible, to effectuate such remedy.

*Farnum*, 78 A. at 902-03. The Supreme Court of Minnesota made a similar observation in the context of a request to receive attorney's fees for an unsuccessful attempt to terminate a guardianship:

The second point urged is that the probate court, in a guardianship proceeding, and the district court, on appeal from the probate court, have no authority or jurisdiction to allow attorney's fees or expenses to an attorney for an incompetent person in a proceeding for restoration to capacity, where the attorney is not employed by the guardian. Under [Minnesota statutory law], the incompetent had the legal right to apply to the probate court for restoration to capacity. All her property being then in the hands of her guardian and subject to the control of the probate court, she would be practically helpless to carry on the proceeding for restoration to capacity, unless the probate court would allow sufficient of her property in the hands of her guardian to be used for the payment of necessary attorney's fees and expenses. If the incompetent and her attorney acted in good faith, and the trial court has so found on sufficient evidence, there appears to be no reason why the probate court was not authorized to allow the necessary sum to pay the fees and expenses out of the estate of the ward.

*Marquette Trust Co. v. Collins*, 187 Minn. 514, 246 N.W. 5, 6 (1932).

We agree with these courts that imposing an additional requirement that the ward possess the legal capacity to enter into a contract with

retained counsel would make it exceedingly difficult for individuals served with guardianship petitions, or those attempting to terminate an existing guardianship, to obtain retained counsel. Any contract the ward entered into with retained counsel would be completely invalidated if the guardianship petition is granted or the petition to terminate the guardianship is denied. Thus, endorsing the Superior Court's approach "would seem to imply an approval of speculative or contingent fees" in all guardianship cases — where retained counsel would get paid if the petition is denied or an existing guardianship is terminated, but would otherwise receive no compensation — "which certainly ought not to be tolerated in cases where the client is suffering under any disability." *Magoon*, 16 Haw. at 15-16.

■ Based on this interpretation of former section 844, we reverse the October 10, 2012 Order. Of course, the fact that the Superior Court erred in categorically denying Edney's request for attorney's fees and costs does not mean that Edney is entitled to collect $150,685.84 from Lillian's estate. Pursuant to former section 844, expenses charged to the ward's estate must be "reasonable," and the above authorities all indicate that the court should not merely rubber stamp the attorney's request for fees, but play an active role in determining if the expenditures were reasonably necessary to safeguard the ward's legal right to defend against the initial guardianship petition and to attempt to terminate the guardianship, whether before the Superior Court or on appeal to this Court. *See, e.g., Marquette Trust*, 246 N.W. at 6; *Magoon*, 16 Haw. at 15; *Barbo*, 31 N.W. at 160. Therefore, although we hold that Edney is entitled to collect reasonable attorney's fees and costs from Lillian's estate, we direct the Superior Court, on remand, to conduct a reasonableness analysis in the first instance.

## III. CONCLUSION

For the foregoing reasons, we reverse the October 10, 2012 Order and remand this matter to the Superior Court for further proceedings consistent with our decision herein.